Lupe E. Martinez
4445 E. Illinois Street
Fresno. California 93702
(559) 252-3557

Ralph C. Rendon
Bkg. # 0507672 Jid. # 266282
P.O. Box 872
Fresno. California 93702

Plaintiffs In Pro-Se

**FILED**

MAR - 1 2006

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY____
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

**1:   0 6 CV 0 0 2 3 3 OWW DLB**

| | |
|---|---|
| Lupe E. Martinez, In Behalf of Herself and all Similarly Situated.<br>Ralph C. Rendon, In Behalf of Himself and all Similarly Situated.<br>　　　　　Plaintiffs<br><br>Vs.<br><br>City of Fresno, Jerry Dyer, Chief of the Fresno Police Department; Sgt. Michael Manfredi; Officer Marcus K. Tafoya; and Does 1-20, in their Official and Capacities, Inclusive.<br>　　　　　Defendants. | Case No._____<br><br><br><br>Complaint For Violation of Civil Rights:<br>42 U.S.C. §§ 1983, 1985; 28 U.S.C. §§ 1331, 1343<br><br>Demand For Jury Trial |

**TO THE HONORABLE JUDGE OF SAID COURT:**

Civil Rights Complaint - 1

**Jurisdiction**

1.    This Federal cause action is brought pursuant to 42 U.S.C. §§ 1983 and 1985 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, i.e., District Court's Original Jurisdiction and right to seek damages and redress for deprivation of Constitutional rights.   The Court also has pendent jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.    Plaintiffs further seek relief directly under § 1983, for monetary, declaratory, and injunctive relief as established by the Supreme Court of the United States in Monell v. New York City Dept. of Social Services (1978) 436 U.S. 658.   The unlawful acts and practices alleged occurred primarily within this judicial district and the majority of the Defendants reside within this District.  28 U.S.C. § 1391 (b).  Plaintiff respectfully requests a jury trial on these allegations.

Parties

2.    Plaintiff Lupe E. Martinez (hereinafter Plaintiff "Martinez") is and was at all times mentioned herein, a citizen within the meaning of 42 U.S.C. § 1983, and brings this Civil Rights Complaint in behalf of herself.

3.    Plaintiff Ralph C. Rendon (hereinafter Plaintiff "Rendon") is and was at all times mentioned herein, citizens within the meaning of 42 U.S.C. § 1983, and brings this Civil Rights Complaint in behalf of himself.

4.   At all times mentioned herein. Defendant City of Fresno was and is a municipal government, and the Fresno City Police Department (hereafter "Department") was a department thereof organized and existing under the laws of the State of California.

5.   At all times mentioned herein, Defendants Sgt. Michael Manfredi (hereafter "Defendant Sgt. Manfredi"), Officer Marcus K. Tafoya (hereafter "Defendant Tafoya") were law enforcement officers in the Fresno City Police Department.

6.   At all times mentioned herein, Defendant Jerry Dyer (hereafter "Defendant Chief Dyer") was Chief of the Fresno City Police Department, and as such, he was the commanding officer of Defendants Sgt. Manfredi, Tafoya and Does 1-20, and was responsible for the training, supervision, and conduct of Defendants Sgt. Manfredi, Tafoya, and Does 1-20. Defendant Chief Dyer is further responsible by law for enforcing regulations of Defendant City of Fresno and for ensuring that Fresno City Police Officers obey the laws of the State of California and the United States of America.

7.   At all times mentioned herein, Defendants Sgt. Manfredi, Tafoya, and Does 1-20, in doing all of the things hereinafter mentioned, acted under color of their authority as such, and under color of the statutes, ordinances, regulations, customs, and usages of the State of California, the City of Fresno. and pursuant to the official policy of Defendant Municipality as created by Defendant Chief Dyer, acting under color of his authority as such.

Civil Rights Complaint - 3

8. Plaintiffs believe, and thereon alleges, that at all relevant times Defendants Sgt. Manfredi, Tafoya, and Does 1-20, were acting according to official or tacitly approved policy practice and custom of the policy making Defendants and/or that Defendants Sgt. Manfredi, Tafoya's, and Does 1-20, conduct was ratified by the aforesaid policy making Defendants.

9. Plaintiffs sue Defendants Sgt. Manfredi, Tafoya, Does 1-20, in their individual and/or personal capacities.

10. The acts complained of herein occurred in City and County of Fresno, California.

11. Plaintiffs believe, and thereon alleges, that at all times mentioned herein each of the Defendants was the agent and employee of each of the remaining Defendants and in doing the things hereafter alleged was acting within the course and scope of such agency and employment.

12. Defendant John Does 1-20, are each responsible in some manner for the constitutional violations and damages to Plaintiffs alleged herein. The true names and capacities of Defendant Does 1-20 are presently unknown to Plaintiff. Many of the Does were involved in the incident described herein, and are sued in their individual and/or personal capacities. Plaintiffs are informed and believe and therefore allege on information and belief, that each of the Defendants are responsible in some manner for the constitutional violations and damages to the Plaintiffs alleged herein. Plaintiffs therefore sue Does 1-20 by such fictitious names and will seek leave to amend this complaint to add their true names when the same have been ascertained by or through discovery. Plaintiffs do have reason to believe that some of the Does are named in the "Incident Information" hereafter the "Police Report" on pages 11-12.

# FIRST CAUSE OF ACTION

**(Violation of Civil Rights Under Color of Law; Fourth and Fourteenth Amendments of the Constitution of the United States; Art. I, §§ 7 and 13 of the Cal. Const.; 42 U.S.C. § 1983, 1988; and Cal. Civ. Code, §§ 52, 52.1)**

**(Against Defendants Sgt. Manfredi, Tafoya, and Does 1-20)**

13.    Plaintiffs realleges and incorporates by reference herein allegations 1 through 11 as though fully set forth at this point.

14.    This is a cause of action for deprivation of constitutional rights under color of state law brought pursuant to the Civil Rights Act of 1971, 42 U.S.C. §§ 1983, 1985, 28 U.S.C.§§ 1331, 1343 for remedies for the Defendants' deprivation of Plaintiffs' civil rights.

15.    Plaintiffs allege that the Defendants, Manfredi, Tafoya, and Does 1-20, used excessive force during the course of a disturbance call.  By this action Plaintiffs seek all legal and actual relief to which they may be entitled, including, but not limited to, compensatory, actual, or punitive damages, fees and cost, and prejudgment interest.

16.    March 5th, 2005, Plaintiffs were at the welcome home party for their Brother, George Rendon, who had returned safely from the War in Iraq. The welcome home party was held at 4519 E. Mono Ave, in Fresno, California. During the course of the party, two men exchanged words. To avoid any kind of confrontation, family members separated the two men. During this separation, there was never any kind of fight or physical confrontation. The separation of the two men consisted of restraint as opposed to physical force.

17.     Plaintiffs' brothers had military and correctional peace officer's experience in altercations, fights, and melees, with the knowledge when to use "restraint." Since there was not a fight or physical confrontation between the two men, the only force used to separate the two men was that of "restraint."

18.     During the restraining of the two men, approximately 12 to 15 Police Officers from the Fresno Police Department arrived at the home and without investigating the incident or without provocation, the Police Officers started hitting People with batons and using force that was unreasonable in light of the facts and circumstances confronting them.

19.     Defendants Tofoya and Manfredi, along with four or five unknown Police Officers, entered the home hitting People with batons and throwing them to the floor. Several of the People were injured as a result of Defendants Tofoya, Manfredi, and the unknown Police Officers hitting them with the batons and getting thrown to the floor. Several People were hospitalized as a result of the injuries sustained at the hands of the Defendants Tofoya, Manfredi, and the unknown Police Officers.

20.     There were no fights or physical confrontation that could be viewed by a reasonable Police Officer to allow him or her to make a split-second decision to use force that was excessive in light of the circumstances confronting the Police Officers. Defendants' actions were objectively unreasonable because there were no physical confrontation by anyone, at the home, that would jeopardize any ones' safety.

21.     As a result of this incident, the Plaintiffs and several Persons were arrested on various violation of the California Penal Code; several were taken the local Hospitals for treatment of their injuries sustained at the hands of the Defendants.

22.     Defendants used excessive force in seizing and arresting Plaintiffs and the People resulting in various injuries being sustained.  None of the above-described acts was provoked or necessary to effectuate Plaintiffs seizure and arrest and the force employed was excessive.

23.     Throughout the above-described incident, the Defendants Does observed the alleged acts of force used and were capable of intervening to protect the Plaintiffs but chose not to, despite the fact that they held Plaintiffs in custody and had a duty to protect them from such acts and force.

24.     Plaintiff Martinez was five months pregnant at the time of the incident described herein and suffered injuries at the hands of Defendant Tafoya.  Plaintiff Martinez was trying to stop the verbal confrontation between the two men when Defendant Tafoya arrived.  Defendant Tafoya immediately started to hit and throw people around.  Plaintiff Martinez asked, "What are you doing?"  Defendant Tafoya threw Plaintiff Martinez to the ground and as a result sustained injuries to her arms, legs, and back.  Defendant Tafoya instructed another Police Officer to handcuff Plaintiff and arrest her.     Plaintiff was further traumatized by Defendant Tafoya's action and conduct.  Defendant Tafoya knew or should have known that Plaintiff Martinez was pregnant at the time of the incident.  Plaintiff Martinez never provoked Defendant Tafoya's actions and conduct.

25.    Plaintiff Rendon was trying to stop the verbal confrontation between the two men when Defendant Manfredi arrived.   Plaintiff Rendon saw Defendant Manfredi hitting and pushing other People from the porch.   Defendant Manfredi got to Plaintiff Rendon when Defendant Manfredi pushed Plaintiff to the ground face down.  Defendant Manfredi started hitting Plaintiff Rendon and was trying to place handcuffs on Plaintiff.  At that point, Defendant Manfredi hit Plaintiff Rendon on the head with his weapon, i.e., his service gun.  As a result of Defendant Manfredi's actions, Plaintiff Rendon suffered injuries to his head and body.  Plaintiff Rendon was taken to the Hospital for his injuries.  Plaintiff Rendon never provoked the force used by Defendant Manfredi.

26.    As a direct and proximate result of the above-referenced unlawful acts of force and unlawful conduct, by the Defendants Manfredi and Tafoya, committed under color of law and under their authority as police officers, Plaintiffs were deprived of their rights to be secure in their person against an unreasonable seizure, i.e., an unreasonable use of force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States; Article I, §§ 7 and 13 of the California Constitution; and in violation of law, 42 U.S.C. §§ 1983, 1985; 28 U.S.C. § 1343 and California Civil Code, §§ 52, 52.1.

27.    As a further direct and proximate result of the malicious and outrageous conduct of Defendants Manfredi and Tafoya, Plaintiffs have suffered special damages in the form of loss of job, wages, imprisonment, and will suffer additional special damages in the future.

# SECOND CAUSE OF ACTION

**(Violation of Civil Rights Under Color of Law; Fourth and Fourteenth Amendments of the Constitution of the United States; Art. 1, §§ 7 and 13 of the Cal. Const.; 42 U.S.C. §§ 1983 and 1988; and Cal. Civ. Code, §§ 52, 52.1)**

(Against Defendants City of Fresno, and Chief Dyer for negligent hiring, training, staffing, and supervision)

28.    Plaintiffs realleges and incorporate by reference herein allegations 1 through 24 as though fully set forth at this point.

29.    Plaintiffs are informed and believe and thereon allege that Defendants City of Fresno and Chief Dyer, negligently hired, trained, staffed, and supervised the Defendants and that the negligent act or omissions of these Defendants, and each of them, were a proximate legal cause of the constitutional violations suffered by the Plaintiffs.

30.    The Defendants City of Fresno and Chief Dyer, breached their duty of care to the Plaintiffs; in that, it negligently hired, trained, staffed, and supervised the above-described City of Fresno employees by failing to adequately and properly supervise, control, and discipline the named Defendants in their duties to refrain from unlawfully and maliciously assaulting and injuring citizens and otherwise using unreasonable and excessive force before, during, and after making an arrest or seizure.

31.    The Defendants City of Fresno and Chief Dyer knew and has known of Defendants Sgt. Manfredi and Tafoya extensive history of complaints, shootings, and lawsuits.

32.     Defendants City of Fresno and Chief Dyer, directly or indirectly, under color of law, approved or ratified the unlawful, malicious, reckless, and wanton conduct of the Defendants heretofore described.

33.     As a direct and proximate result of the acts of Defendants City of Fresno and Chief Dyer as set forth herein, Plaintiffs have suffered injury, lost of job, lost of wages, imprisonment, and mental anguish in connection with the deprivation of the Constitutional rights guaranteed and established by the Fourth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §§ 1983, 1985; 28 U.S.C. § 1343, and California Civil Code §§ 52, 52.1.

34.     As a direct and proximate result of the actions of policymaking Defendants, and each of them, against the Plaintiffs, as alleged above, Plaintiffs have been harmed; in that, they suffered great anguish, fear, and consternation. Additionally, the Plaintiffs have suffered special damages in the form of loss of job, wages, and imprisonment and will suffer additional special damages in the future. The Plaintiffs were also subjected to humiliation and indignity, mental pain and suffering, all to his damage in an amount according to proof.

32.    The acts of Defendants as set forth above were wanton, malicious, and oppressive, thus entitling the Plaintiffs to an award of punitive damages as against individual defendants.

# THIRD CAUSE OF ACTION

**(Violation of Civil Rights Under Color of Law; Fourth and Fourteenth Amendments of the Constitution of the United States; Art. I, §§ 7 and 13; 42 U.S.C. §§ 1983 and 1985; 28 U.S.C. § 1343 and Cal. Penal Code, §§ 118.1 and 118(a))**

(Against Defendants Sgt. Manfredi and Tafoya for conspiring to violate Plaintiff's constitutional secured rights by falsifying the Police Report)

33.    Plaintiff realleges and incorporates by reference herein allegations 1 through 32 as though fully set forth at this point.

34.    This is a cause of action for deprivation of constitutional rights under color of state law brought pursuant to the Civil Rights Act of 1971, 42 U.S.C. § 1983 for remedies for the Defendants' deprivation of Plaintiffs' civil rights and for Conspiring to interfere with Plaintiffs' civil rights pursuant to 42 U.S.C. § 1985 and 28 U.S.C. § 1343.

35.    Defendants Sgt. Manfredi and Tafoya conspired together by falsely creating the allegations of the Police Report in order to justify their unlawful acts and conduct.  This conspiracy led to the underlying violation of Plaintiffs' Fourth Amendment right to be free from an unlawful seizure, i.e., the use of excessive force in the course of seizing and arresting Plaintiffs.

36.    Plaintiffs allege that it is a violation of State law to falsify a Police Report and commit perjury in and from that process. Plaintiff alleges it is unlawful to falsify a Police Report and to commit perjury in the State of California.  §§ 118.1 and 118(a), Cal. Penal Code.  Defendants Sgt. Manfredi and Tafoya falsified the Police Report [#50AL3386 – attached to the Appendix marked Exhibit "A"].

37.    It is also a violation of the Fourth Amendment, applicable to the States through the Fourteenth Amendment, to conspire to violate a citizens' right by falsifying a Police Report. Plaintiffs contend that there is no constitutional difference in falsifying a **police report or falsifying an affidavit supporting a search warrant.** Cf. Baldwin v. Placer County, 405 F.3d 778 (9th Cir. 2005).

38.    Plaintiff Martinez alleges that Defendants Manfredi and Tafoya [in] conspiring to falsify the Police Report, the falsehood led to Plaintiff being falsely arrested, falsely charged with criminal conduct which caused Plaintiff to serve time in jail and is awaiting trial on the criminal charges.

39.    Plaintiff Rendon alleges that Defendants Manfredi and Tafoya [in] conspiring to falsify the Police Report, the falsehood led to Plaintiff being falsely arrested, falsely charged with criminal conduct, which has caused Plaintiff to be falsely imprisonment in the Fresno County Jail since March 10th, 2005, and is awaiting trial on the criminal charges. Further, Defendant Manfredi has repeated the false story in an official court proceeding, i.e., Plaintiff's Preliminary Hearing held on May 27th, 2005, in the Fresno County Superior Court. See, copy of Preliminary Examination Transcript attached to the Appendix marked Exhibit "B".

40.    As a direct and proximate result of the above-referenced unlawful acts and unlawful conduct by the Defendants committed under color of law and under their authority as police officers, Plaintiffs have been deprived of their rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

41.    As a further direct and proximate result of the malicious and outrageous conduct of the Defendants, Plaintiffs have suffered special damages in the form of loss of job, wages, and imprisonment and will suffer additional special damages in the future, an amount which cannot yet be determined.

## FOURTH CAUSE OF ACTION

### (Violation of Civil Rights Pursuant to Art. I, §§ 7 and 13, Cal. Const.) (As to all Defendants)

42.    Plaintiffs realleges and incorporate by reference herein allegations 1 through 40 as though fully set forth at this point.

43.    The actions of Defendants, City of Fresno, Chief Jerry Dyer, Sgt. Manfredi, Tafoya, and Does 1-20, in their individual and official capacities, and each of them, as set forth above, committed under color of law and under their authority as Police Officers, deprived Plaintiffs of their rights to be secured in their person against unreasonable seizure in violation of Article I, §§ 7 and 13 of the California Constitution.

44.    As a direct and proximate result of the actions Defendants, City of Fresno, Chief Jerry Dyer, Sgt. Manfredi, Tafoya, and Does 1-20, and each of them, as set forth above, Plaintiffs have been damaged by the loss of their rights to be secured in their person against unreasonable seizure and public humiliation and being arrested without due process as guaranteed to them under Article I, §§ 7 and 13 of the California Constitution.

1   45.    The above-recited actions of Defendants, City of Fresno, Chief Jerry Dyer, Sgt. Manfredi,

2   Tafoya, and Does 1-20, and each of them, in depriving Plaintiffs of their rights protected by

3   Article I, §§ 7 and 13 of the California Constitution, thus entitling Plaintiff to an ward of punitive

4   damages against all Defendants.

5

6                                                **PRAYER**

7

8   WHEREFORE, Plaintiffs respectfully pray for a judgment as follows:

9   1. For compensatory damages against all Defendants in the amount of $2,500,000.00, jointly

10  and severally.

11  2. For exemplary and punitive damages against Defendants Sgt. Manfredi, Tafoya, Does 1-20,

12  Chief Jerry Dyer, in the amount of $2,500,000.00, jointly and severally.

13  3. Actual damages in the amount to which Plaintiffs can show they have incurred as a result of

14  Defendants' conduct.

15  4. Cost of the suit and for such other and further relief as the court deems proper.

16

17

18  Dated: February 24th, 2006

19  _____
    Lupe E. Martinez
20  In Behalf of Herself

21  _____
22  Ralph C. Rendon
    In Behalf of Himself
23

24

25

# APPENDIX

# EXHIBIT "A"

# POLICE REPORT

LAW ENFORCEMENT REPORT FORM
FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000
CA0100500

Event: 05AI3386                                                                      Case: 05-021148

## INCIDENT INFORMATION

Report #: 1 of 12     Report Type: PERS CRIME      District: SE   Sector: D     Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 00:15 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rev:: T

## CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/17/2005 9:58:54 AM    Printed By: SCOTT (V2711), DEBORAH ANN(C172)     Printed From: PLO168
Rpt #: 1     Type: FIRST     Officer: TAFOYA (V3596), MARCUS #P1054     Clerk: TAFOYA (V3596), MARCUS #P1054
Created: 03/05/05 23:59   Filed Date: 03/06/05 00:16     Assigned Date: 03/05/05 23:59   Typed By: T535
Date Typed: 3/7/2005
Report Dictated
Approved By: RAMOS (V3576), DAVID A #S128                          Date Approved: 3/15/2005 4:31:14 AM
Reviewed By: FLEMING (V3827), MARCIA #T118                         Date Reviewed: 3/16/2005 1:56:12 PM
Routing: None

## NAMES

Inv: ARRESTED # 1     Adult/Juvenile: A  Type: PERSON
Name: RENDON, DAVID ANTHONY
Race: H     Sex: M     DOB: 10/09/1973  Age: 31     Height: 506 Weight: 177 Hair: BRO  Eyes: BRO
Language: ENGLISH     Suspect Status: ARR
Identification: DL - A9455713 - CA

***** Arrest Information *****
Arrest Number: A05-05982     Arrest Date: 3/6/2005 12:10:00 AM
Location of Arrest: 4519 E MONO AV , FRESNO
At: S BARTON AV
Booked: 3/6/2005 10:41:00 PM

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---------|------|-----|-------------|--------|------|---------|
| 69 | PC | M | OBSTRUCT/RESIST EXEC OFCR | 1 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD
Juvenile Notified By: #
Juvenile Mirandized By: #

Officer: TAFOYA (V3596), MARCUS #P1054                                              Page 1 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

FRESNO POLICE DEPARTMENT

Event: 05A13386                           CA0100509                              Case: 05-021148

PCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054      48 Hour Expiration: 3/8/2005 12:10:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE
LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH
VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE
THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH
RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND TACKELED HIM TO THE
GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE
GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81
ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT
PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83
WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I
BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO
DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE
HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-
09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE
YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT
LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT
LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS
GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN
UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT.
WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON
4-30-75 IN CUSTODY. WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT
JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO
STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME
UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO
ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE
ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS
RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE
BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN
CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED
BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST
GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO
PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME
WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD
JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS
WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-
09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST
AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF
ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY.
In Custody

Inv: ARRESTED # 2          Adult/Juvenile: A  Type: PERSON
Name: HERNANDEZ, ALFRED
Race: H      Sex: M      DOB: 01/01/1977   Age: 28      Height: 511 Weight: 200 Hair: BLK  Eyes: BRO
Birth City: FRESNO       Birth State: CA      Clothing: BLACK RAIDER SHRT "75" LONG, BLUE JEANS,
Crime Type: 415     Suspect Status: ARR
Physical Desc:    Category                    Type
                  FACIAL HAIR                 MUSTACHE
                  BODY BUILD                  HEAVY
                  FACIAL HAIR                 UNSHAVEN
Scars, Marks and Tattoos:  Location           Feature          Description
                           FOREARM RIGHT      SCAR             3-4"

Officer: TAFOYA (V3596), MARCUS #P1054                                              Page 2 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

# FRESNO POLICE DEPARTMENT
## CA0100500

Event: 05AI3386            Case: 05-021148

Identification: DL - B6160091 - CA ; SOC - 568478275 - SOCSEC ; OA - 163534 - FPD ; DL - B9770135 - CA

***** Charge Information *****

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

Inv: ARRESTED # 3     Adult/Juvenile: A   Type: PERSON
Name: NUNEZ, LORENZO
Race: H    Sex: M     DOB: 07/14/1980   Age: 24    Height: 508   Weight: 150   Hair: BLK   Eyes: BRO
Language: ENGLISH    Clothing: WHITE BUTTON SHIRT, LONG SLEEVE, BLU JEANS    Crime Type: 148(A)(1)
Suspect Status: ARR

| Physical Desc: | Category | Type |
|---|---|---|
| | FACIAL HAIR | MUSTACHE |

| Scars, Marks and Tattoos: | Location | Feature | Description |
|---|---|---|---|
| | CHEST | TAT | "F" RIGHT SIDE |
| | CHEST | TAT | "S" LEFT SIDE |

Identification: SOC - 560629 - CA

***** Charge Information *****

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

Inv: ARRESTED # 4     Adult/Juvenile: A   Type: PERSON
Name: RENDON, LAWRENCE
Race: H    Sex: M     DOB: 04/30/1975   Age: 29    Height: 506   Weight: 170   Hair: BRO   Eyes: BRO
Language: ENGLISH    Clothing: BLUE JEANS, DK BLUE SHIRT,   Crime Type: 69   Suspect Status: ARR

| Scars, Marks and Tattoos: | Location | Feature | Description |
|---|---|---|---|
| | CHEST | TAT | L/SIDE CHEST |

Identification: DL - B4407967 - CA

***** Arrest Information *****
Arrest Number: A05-05979     Arrest Date: 3/6/2005 12:15:00 AM
Location of Arrest: 4519 E MONO AV , FRESNO
At: S BARTON AV
Booked: 3/6/2005 10:34:00 PM

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 69 | PC | M | OBSTRUCT/RESIST EXEC OFCR | 1 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

Section: 415(1)     Judicial District: FRESNO MUNI
Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD
Juvenile Notified By: #
Juvenile Mirandized By: #
PCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054     48 Hour Expiration: 3/8/2005 12:15:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE

Officer: TAFOYA (V3596), MARCUS #P1054                    Page 3 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

## FRESNO POLICE DEPARTMENT

Event: 05AI3386          CA0100500          Case: 05-021148

LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND TACKELED HIM TO THE GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81 ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83 WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT. WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON 4-30-75 IN CUSTODY. WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY.
, In Custody

---

Inv: ARRESTED # 6      Adult/Juvenile: A   Type: PERSON
Name: RENDON, PRICILLA ROSE
Race: H      Sex: F      DOB: 11/29/1983   Age: 21     Height: 411   Weight: 102   Hair: BRO   Eyes: BRO
Language: ENGLISH      Clothing: BLACK SWEAT PANTS     Crime Type: 148(A)(1)   Suspect Status: ARR
Identification: DL - D3312912 - CA

***** Charge Information *****

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---------|------|-----|-------------|--------|------|---------|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

---

Officer: TAFOYA (V3596), MARCUS #P1054          Page 4 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

FRESNO POLICE DEPARTMENT

Event: 05413386                                    CA0100599                                    Case: 05-021148

## NAMES

Inv: ARRESTED # 7      Adult/Juvenile: A  Type: PERSON
Name: RENDON, GEORGE
Race: H      Sex: M      DOE: 10/23/1983   Age: 21      Height: 506  Weight: 155  Hair: BRO   Eyes: BRO
Language: ENGLISH      Suspect Status: ARR
Identification: DL - D135781 - CA

[illegible identification lines]

ADDRESS: 2015 JACKSONVILLE NC 28540

***** Arrest Information *****
Arrest Number: A05-05980      Arrest Date: 3/6/2005 12:15:00 AM
Location of Arrest: 4519 E MONO AV , FRESNO
At: S BARTON AV
Booked: 3/6/2005 10:36:00 PM

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 69 | PC | M | OBSTRUCT/RESIST EXEC OFCR | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |

Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD
Juvenile Notified By: #
Juvenile Mirandized By: #
PCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054      48 Hour Expiration: 3/8/2005 12:15:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE
LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH
VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE
THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH
RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND TACKELED HIM TO THE
GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE
GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81
ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT
PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83
WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I
BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO
DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE
HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-
09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE
YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT
LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT
LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS
GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN
UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT.
WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON
4-30-75 IN CUSTODY, WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT
JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO
STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME
UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO
ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE
ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS
RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE
BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN
CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED
BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST
GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO

Officer: TAFOYA (V3596), MARCUS #P1054                                    Page 5 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

FRESNO POLICE DEPARTMENT

Event: 05A13386                           CA0100500                              Case: 05-021148

PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY.
In Custody

Inv: ARRESTED # 8          Adult/Juvenile: A   Type: PERSON
Name: NUNEZ, JOHN JR
Race: H       Sex: M      DOB: 01/29/1966   Age: 39     Height: 509  Weight: 200 Hair: BLK  Eyes: BRO
Language: ENGLISH         Birth City: FRESNO   Birth State: CA   Clothing: WHITE LONG SLEEVE SHIRT, TAN PANTS
Suspect Status: ARR
Scars, Marks and Tattoos:   Location          Feature              Description
                            LF ARM            TAT                  LINDA
Identification: DL - B3947180 - CA

***** Arrest Information *****
Arrest Number: A05-05981        Arrest Date: 3/6/2005 12:01:00 AM
Location of Arrest: 4545 E MONO AV , FRESNO
At: TENTH ST S
Booked: 3/6/2005 10:38:00 PM
Section      Code   Lvl          Description                           Counts   Bail     Warrant
69           PC     M            OBSTRUCT/RESIST EXEC OFCR               1
148(D)       PC     F            ATT RMV/ETC F/ARM:PO/ETC                1
Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD
Juvenile Notified By: #
Juvenile Mirandized By: #
PCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054      48 Hour Expiration: 3/8/2005 12:01:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE
LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH
VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE
THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH
RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND TACKELED HIM TO THE
GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE
GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81
ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT
PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83
WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I
BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO
DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE
HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-
09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE
YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT
LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT
LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS
GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN
UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT.
WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON
4-30-75 IN CUSTODY. WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT
JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO
Officer: TAFOYA (V3596), MARCUS #P1054                                              Page 6 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

### FRESNO POLICE DEPARTMENT

Event: 05-413386                                CA0100500                                Case: 05-021148

STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY.

In Custody

---

Inv: ARRESTED # 9     Adult/Juvenile: A   Type: PERSON
Name: RENDON, DAVID JOE
Race: H     Sex: M     DOB: 10/02/1954   Age: 50     Height: 506   Weight: 240   Hair: BRO   Eyes: BRO
Language: ENGLISH     PD#: 172827     Birth City: FRESNO     Birth State: CA
Clothing: GREEN SHRT, GREEN PANTS     Suspect Status: ARR
AKA Name: RENDON     First: DAVID

Scars, Marks and Tattoos:

| Location | Feature | Description |
|---|---|---|
| BACK UPPER | TATTOO | RENDON |
| SHOULDER LEFT | SCAR | |

Identification: DL - N2624894 - CA | SOC - 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 - SOCSEC

**\*\*\*\*\* Charge Information \*\*\*\*\***

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 243(B) | PC | M | BATT PO/EMERG PRSNL/ETC | 1 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

---

Inv: ARRESTED # 10     Adult/Juvenile: A   Type: PERSON
Name: RENDON, RICARDO
Race: H     Sex: M     DOB: 02/08/1979   Age: 26     Height: 507   Weight: 175   Hair: BRO   Eyes: BRO
Language: ENGLISH     Clothing: WHITE T-SHIRT (LORENZO WAS WEARING THIS SUBJECTS SHIRT)
Suspect Status: ARR

**\*\*\*\*\* Arrest Information \*\*\*\*\***

Arrest Number: A05-05983     Arrest Date: 3/6/2005 12:20:00 AM
Location of Arrest: 4519 E MONO AV , FRESNO
At: S BARTON AV
Booked: 3/6/2005 10:42:00 PM

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 69 | PC | M | OBSTRUCT/RESIST EXEC OFCR | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD

Officer: TAFOYA (V3596), MARCUS #P1054                                Page 7 of 16
Supervisor: RAMOS (V3576), DAVID A #S128

FRESNO POLICE DEPARTMENT

Event: 05A13386                                    CA0100500                                    Case: 05-021148

Juvenile Notified By: ≠
Juvenile Mirandized By: ≠

FCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054 `      48 Hour Expiration: 3/8/2005 12:20:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE
LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH
VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE
THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH
RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND TACKELED HIM TO THE
GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE
GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81
ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT
PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83
WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I
BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO
DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE
HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-
09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE
YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT
LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT
LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS
GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN
UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT.
WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON
4-30-75 IN CUSTODY. WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT
JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO
STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME
UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO
ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE
ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS
RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE
BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN
CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED
BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST
GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO
PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME
WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD
JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS
WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-
09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST
AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF
ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY.
In Custody

Inv: ARRESTED # 11        Adult/Juvenile: A  Type: PERSON
Name: CENTENO, VIVIAN V
Race: H      Sex: F       DOB: 08/30/1973  Age: 31       Height: 501  Weight: 120  Hair: BRO  Eyes: BRO
Language: ENGLISH         Suspect Status: ARR
AKA Name: CENTENO   First: VIVIAN       Middle: VICTORIA
Identification: DL - B5600031 - CA

***** Charge Information *****
Section        Code   Lvl              Description                          Counts    Bail        Warrant

Officer: TAFOYA (V3596), MARCUS #P1054
Supervisor: RAMOS (V3576), DAVID A #S128

# FRESNO POLICE DEPARTMENT

| Event: 05A13386 | | | CA0100500 | | | Case: 05-021148 |
|---|---|---|---|---|---|---|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |

**Inv: ARRESTED # 12**    Adult/Juvenile: A   Type: PERSON
Name: MARTINEZ, LUPE ELEANOR
Race: H     Sex: F     **DOB:** 06/30/1980   Age: 24      Height: 503  Weight: 180  Hair: BLK   Eyes: BRO
Crime Type: 148    Suspect Status: ARR
Identification: DL - B7612213 - CA

**\*\*\*\*\* Charge Information \*\*\*\*\***

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |

**Inv: ARRESTED # 13**    Adult/Juvenile: A   Type: PERSON
Name: RENDON, RALPH CHRISTOPHER
Race: H     Sex: M     **DOB:** 07/18/1981   Age: 23      Height: 508  Weight: 170  Hair: BLK   Eyes: BRO
Clothing: LIGHT SHIRT

| Physical Desc: | Category | Type |
|---|---|---|
| | BODY BUILD | MEDIUM |
| | COMPLEXION | MEDIUM |
| | EMOTIONAL STATE | ANGRY |
| | EMOTIONAL STATE | HYSTERICAL |
| | EMOTIONAL STATE | IRRATIONAL |
| | EMOTIONAL STATE | THREATENING |
| | EMOTIONAL STATE | UPSET |
| | HAIR LENGTH | SHORT |
| | HAIR TYPE | BALD |

| Scars, Marks and Tattoos: | Location | Feature | Description |
|---|---|---|---|
| | ARM | TAT | BULLDOG HEAD |

**\*\*\*\*\* Arrest Information \*\*\*\*\***
**Arrest Number:** A05-05977    **Arrest Date:** 3/6/2005 12:05:00 AM
Location of Arrest: 32 EIGHTH ST , CLOVIS
At: S BARTON AV
Booked: 3/6/2005 9:59:00 PM

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 69 | PC | F | OBSTRUCT/RESIST EXEC OFCR | 2 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415 | PC | M | FIGHTING IN PUBLIC | 1 | | |
| 243(C)(2) | PC | F | BATTERY AGAINST PO | 1 | | |
| 148(D) | PC | F | ATT RMV/ETC F/ARM:PO/ETC | 1 | | |

Section: 415   Judicial District: FRESNO MUNI
Section: 148(D)   Judicial District: FRESNO MUNI
Arresting Officer: M TAFOYA (V3596) Arresting Agency: FPD
Juvenile Notified By: #
Juvenile Mirandized By: #
PCD Declarant Officer: TAFOYA (V3596), MARCUS #P1054    48 Hour Expiration: 3/8/2005 12:05:00 AM
Facts: ON SATURDAY 3-6-5 SGT M MANFREDI #S92 AND I WERE WORKING A TWO MAN UNIFORM PATROL IN A
MARKED VEHICLE ASSIGNED TO SE WATCH II. WE WERE DISPATCHED TO 4519 E MONO FOR A DISTURBANCE WITH
APPROXIMATELY 50 SUBJECTS FIGHTING. WE ARRIVED AND SAW A LARGE DISTURBANCE OUTSIDE OF THE
LOCATION. SGT MANFREDI AND I ATTEMPTED TO STOP THE DISTURBANCE AND PROVIDED THE SUBJECTS WITH

Officer: TAFOYA (V3596), MARCUS #P1054
Supervisor: RAMOS (V3576), DAVID A #S128

FRESNO POLICE DEPARTMENT

Event: 05A13386                              CA0100500                              Case: 05-021148

VERBAL COMMANDS TO STOP FIGHTING. AS WE BEGAN TO PHYSICAL REMOVE SUBJECTS FROM THE DISTURBANCE THEY TURNED TOWARDS MYSELF AND SGT MANFREDI. THREE SUSPECTS, LAWRENCE RENDON 04-30-75; RALPH RENDON 07-18-81; AND GEORGE RENDON 10-23-83, CHARGED AT SGT MANFREDI AND BEGAN HITTING HIM IN THE FACE AND HEAD. ALL THREE SUSPECTS THEN TACKELED HIM TO THE GROUND. THE SUSPECTS BEGAN HITTING AND KICKING SGT MANFREDI. NUMEROUS VOICE COMMANDS WERE GIVEN TO THE SUSPECTS TO STOP THE ATTACK WITH NEG COMPLIANCE. SUSPECT RALPH RENDON 7-18-81 ATTEMPTED TO REMOVE SGT MANFREDI'S FIREARM FROM THE HOLSTER. THE PULLING OF THE FIREARM LIFTED IT PARTIALLY OUT OF THE HOLSTER. SUSPECT LAWRENCE RENDON 04-30-75 AND SUSPECT GEORGE RENDON 10-23-83 WERE OBSERVED HITTING SGT MANFREDI WHILE SUSPECT RALPH RENDON 07-18-81 TRIED TO DISARM HIM. I BEGAN PULLING SUSPECTS OFF OF SGT MANFREDI WHILE PROVIDING VERBAL ORDERS TO THE SUSPECTS TO DISPURSE AND STOP FIGHTING. WHILE DOING SO, SUSPECT DAVID RENDON 10-09-73 RAN FROM THE INSIDE OF THE HOUSE AND STRUCK ME WITH A RIGHT CLOSED FIST ON THE LEFT SIDE OF MY MOUTH. SUSPECT DAVID RENDON 10-09-73 THAN RAN BACK INTO THE HOUSE TO AVOID ARREST. I COULD HERE MALES INSIDE AND OUTSIDE THE HOUSE YELLING "BULLDOG". SUSPECT RENDON LAWRENCE 04-30-75 DIRECTED HIS ATTACK TOWARDS TO ME. SUSPECT LAWRENCE RENDON 04-30-75 USED A CLOSED LEFT FIST AND STRUCK ME IN THE UPPER RIGHT ARM. SUSPECT LAWRENCE RENDON 04-30-75 RAN BACK INSIDE THE RESIDENCE TO AVOID ARREST. A GROUP OF SUBJECTS GRABBED ME FROM BEHIND AND PUSHED ME INTO THE RESIDENCE. AFTER FORCING ME IN THE RESIDENCE AN UNKNOWN SUSPECT LOCKED THE DOOR AND PLACED A CHAIR UNDER THE DOOR KNOB TO KEEP OFFICERS OUT. WHILE INSIDE THE RESIDENCE I TRIED TO TAKE SUSPECT DAVID RENDON 10-9-73 AND SUSPECT LAWRENCE RENDON 4-30-75 IN CUSTODY. WHILE ATTEMPTING TO TAKE THE SUSPECTS IN CUSTODY. I WAS ATTACTED BY SUSPECT JOHN NUNEZ 01-29-66. SUSPECT LAWRENCE RENDON 04-30-75 BEGAN FIGHTING WITH ME BY USING CLOSED FIST TO STRIKE ME IN THE CHEST AND UPPER ARMS. WHILE INVOLVED IN THE FIGHT SUSPECT JOHN NUNEZ 1-29- 66 CAME UP TO ME AND PUSHED ME AWAY FROM SUSPECT LAWRENCE RENDON. THIS ALLOWED LAWRENCE RENDON TO ONCE AGAIN AVOID ARREST. SUSPECT JOHN NUNEZ 1-29-66 TOOK A BLADED STANCE AND CHARGED AFTER ME. HE ATTEMPTED TO HIT ME WITH CLOSED FISTS BUT WAS UNABLE TO. HE DID USE A FRONT THRUST KICK WITH HIS RIGHT LEG. HE WAS ABLE TO KICK MY UPPER LEFT LEG. SUSPECT JOHN NUNEZ 01-29-66 RAN FROM ME TO THE BACK OF THE HOUSE AND AGAIN CHALLENGED ME TO FIGHT. AFTER A STRUGGLE I WAS ABLE TO PLACE HIM IN CUSTODY. I ATTEMPTED TO OPEN THE DOOR TO ALLOW OFFICERS IN THE RESIDENCE. HOWEVER I WAS ATTACTED BY SUSPECT GABRIEL RODRIGUEZ 9-15-73. RODRIGUEZ BEGAN PUSHING ME. WHILE ATTEMPTING TO ARREST GABRIEL RODRIGUEZ I WAS BEING PUSHED AND HIT BY UNKOWN SUBJECTS INSIDE THE RESIDENCE. I TRIED TO PLACE GABRIEL RODRIGUEZ IN A CONTROL HOLD TO PLACE HIM IN CUSTODY. HOWEVER HE BEGAN STRIKING ME WITH CLOSED LEFT AND RIGHT FIST. OFFICERS ARRIVED AND WERE ABLE TO MAKE ENTRY IN THE HOUSE. I HAD JUST WALKED SUSPECT JOHN NUNEZ 1-29-66 OUT OF THE RESIDENCE AND PLACED HIM OUTSIDE. AS I WAS WALKING BACK IN THE HOUSE TO ARREST SUSPECT LAWRENCE RENDON 4-30-75 AND SUSPECT DAVID RENDON 10-09-73, I WAS HIT IN THE FACE BY SUSPECT RICARDO RENDON 02-08-79. RICARDO RENDON USED A CLOSED LEFT FIST AND STRUCK ME ON THE RIGHT SIDE OF MY FACE. HE WAS TAKEN IN CUSTODY. WITH THE ASSISTANCE OF ADDITIONAL OFFICERS I WAS ABLE TO PLACE THE REMAINING SUSPECTS IN CUSTODY. BOTH OFFICERS RECEIVED INJURIES FROM THE SUSPECTS ACTIONS.

In Custody

Inv: ARRESTED # 14      Adult/Juvenile: A  Type: PERSON
Name: RODRIGUEZ, GABRIEL MICHAEL
Race: H       Sex: M       DOB: 09/15/1973   Age: 31      Height: 510  Weight: 145  Hair: BRO   Eyes: BRO

FRESNO POLICE DEPARTMENT

Event: 05413386                                    CA0100500                                    Case: 05-021148

## NAMES

Inv: CITED # 1          Adult/Juvenile: A  Type: PERSON
Name: RODRIGUEZ, REBECCA
Race: H      Sex: F          DOB: 08/07/1976  Age: 28      Height: 506  Weight: 120  Hair: BRO  Eyes: BRO
Language: ENGLISH          Clothing: PINK SHIRT, BLUE JEANS  Crime Type: 243(B)      Suspect Status: CIT
Scars, Marks and Tattoos:  Location          Feature          Description
                           KNEE              SC               RIGHT 2"
Identification: DL - B5754082 - CA
Address: [illegible] CLOVIS CA 93611
Phone: [illegible]
***** Charge Information *****

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---------|------|-----|-------------|--------|------|---------|
| 243(B) | PC | M | BATT PO/EMERG PRSNL/ETC | 1 | | |
| 148(A)(1) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |

## MO

PLACE OF ATTACK
    OTHER
SURROUNDING AREA
    RESIDENTIAL
STRUCT-RESIDENCE
    HOUSE

## OTHER FACTORS

ATTACK METHOD
    STRONG ARM, THREATEN
PERSON CRIMES
    ASSAULT ON PEACE OFFICER

## NARRATIVE

****************NARRATIVE DICTATED************************

## CASE #05-21148.E1
## OFFICER TAFOYA. BADGE #1054

## OFFICERS TO TESTIFY:

Sergeant M. Manfredi, Badge #S92

Officer Marcus Tafoya, Badge #1054

Officer S. Craig, Badge #1094

Officer B. Anaya, Badge #1204

Officer M. Maldonado, Badge #578

Officer E. Escareno, Badge #808

Officer L. Cabrera, Badge #1256

Officer: TAFOYA (V3596), MARCUS #P1054                                    Page 11 of 16
Supervisor: RAMOS (V3576). DAVID A #S128

Officer S. Flick, Badge #1231

Officer J. Jauregui, Badge #1172

## SYNOPSIS:

This report will document the arrest of numerous subjects, some who are Eastside Fresno Bulldog gang members. This report is a documentation of a family gathering, which turned into a physical disturbance. Upon the arrival of officers, family members turned their aggressive attack toward officers.

## SOURCE OF ACTIVITY:

On Saturday, 03/05/05, Sergeant Manfredi and I were working a two-man uniform patrol in a marked patrol vehicle assigned to the Southeast Policing District, Watch II. We were in the area of Kings Canyon at Jackson when we heard a broadcast of a disturbance occurring at 4519 E. Mono. We were approximately three blocks away from the disturbance when the incident was broadcasted.

## INVESTIGATION:

We advised Dispatch that we would respond to the location. Upon arrival, I could hear a large disturbance coming from the 4500 block of east Mono. As we drove westbound on Mono from Jackson, I observed a large group of subjects physically fighting in the front yard. Sergeant Manfredi advised Dispatch that we arrived and that the disturbance was occurring. Sergeant Manfredi requested additional units respond to our location Code 3.

As we exited the patrol vehicle and approached, I parked the patrol vehicle just east of the location, activated the overhead patrol lights, and sounded the siren two times. The purpose of activating the marked patrol vehicle lights and siren was to gain the attention of the subjects and to show our uniformed presence.

Both Sergeant Manfredi and I were working in uniform patrol with patches clearly affixed to the left and right shoulder areas and our badge clearly affixed above the left breast pocket of our police uniform.

We approached on foot and began identifying ourselves as Fresno Police Officers. We gave numerous commands to the subjects out in the front yard to stop fighting. However, our direction of commands were not adhered to by the subjects.

As Sergeant Manfredi and I began approaching, I could see an unknown female lifting a chair and throwing it into the large unruly crowd. There were approximately 50 subjects in the front yard on the porch area and inside the residence all physically fighting. The subjects identified in this report were observed in the front yard of the residence fighting.

As Sergeant Manfredi began removing the subjects from the disturbance, I saw that the crowd became even more unruly and charged after him. Three subjects had taken Sergeant Manfredi to the ground and were striking him with closed fists. I heard Sergeant Manfredi yell out to me that a subject was trying to take his firearm away. I immediately retrieved my department-issued expandable baton and placed it in the expanded position.

I observed Suspect Lawrence Rendon, date of birth 04/30/75, hitting Sergeant Manfredi on the back, upper left shoulder area. Suspect Lawrence Rendon left the location as I began pulling subjects from the large unruly crowd away from the area so that I could assist Sergeant Manfredi. As I approached, I began grabbing a hold of

subjects and physically pulling them away in an attempt to free Sergeant Manfredi. A subject later identified to and referred to throughout this report as David Anthony Rendon, date of birth 10/09/73, approached from my left side on top of the porch area from the inside of the house.

As I was removing an unknown subject from the pile of subjects from the unruly crowd, Suspect David Rendon used a right-closed fist and struck me on the left side of my mouth. I could hear Rendon saying, "Leave my family alone." I could also hear an unknown subjects yelling, "Bulldogs," during the disturbance.

I retrieved my expandable baton, which I placed in the expandable position. Suspect David Rendon, date of birth 10/09/73, fled inside of the residence after striking me. However, Suspect Lawrence Rendon, date of birth 04/30/75, began utilizing a closed-right fist as he lunged himself from the back of the crowd inside of the house over subjects and he began striking me on the top of my head. In an attempt to defend myself, I utilized my expandable baton to keep Suspect Lawrence Rendon from striking me.

After numerous strikes with the baton, Suspect Lawrence Rendon fled into the residence to avoid apprehension.

I felt a large group of people begin pushing me from the outside of the residence into the residence. I attempted to utilize my radio and advised Dispatch that I was being forced into the residence, however, I was unable to. The large group of unknown subjects forced me from the outside of the residence around Sergeant Manfredi and inside of the residence. Once inside of the residence, I began feeling kicks and punches from numerous subjects. I observed Suspect Lawrence Rendon in the residence and attempted to place him in custody, however, I was met with a large amount of physical resistance.

Lawrence Rendon fled into another room to avoid an arrest. As I was attempting to place Lawrence in custody, I was pushed from the side by an older male subject, identified in this report as David Rendon, date of birth 10/02/54. David Rendon stated, "This is my house, get the fuck out." I continued telling subjects to lie on ground and stop fighting. Although I was being struck by numerous subjects, I continued giving verbal commands.

It should be noted that I was in full uniform and obviously a police officer. Patches were clearly affixed to the left and right shoulder area. My batch was clearly affixed above the left breast pocket of my uniform and I identified myself verbally as a Fresno Police Officer.

Suspect Lawrence Rendon had fled to an unknown room in the residence. Each time I attempted to direct my attention to another subject who had either pushed me or hit me, I was again met with resistance from the subjects inside. I looked to the door to see if assisting officers had arrived and observed that the front door was shut. There was also a chair, which was lodged up under the doorknob to keep officers out. I was able to grab a hold of my radio and advised Dispatch that I was inside of the residence and I needed officers Code 3 inside. While advising Dispatch, I continually received strikes to the head, back, and arms.

I advised David Rendon, date of birth 10/02/54, to lie on ground and advised him that he was under arrest for pushing me, battery on a peace officer. While telling David Rendon to get on the ground, I was pushed from the side by Gabriel Rodriguez, date of birth 09/15/73. Rodriguez began swinging his arms aimlessly at me. I was able to move out of the way of some of the strikes, however, Suspect Rodriguez was able to strike me on top of the head and upper-left arm.

I utilized a forward strike with my expandable baton in an attempt to strikeSuspect Rodriguez's arms as he was attacking me. However, as I attempted to utilize a forward swinging strike to Suspect Gabriel Rodriguez, date of birth 09/15/73, upper-left arm, Suspect Gabriel Rodriguez moved and used a ducking like motion. The

expandable baton unintentionally struck Gabriel Rodriguez in the head. However, the strike immediately caused Rodriguez to stop fighting with me. Rodriguez fell to the ground at which time a female, later identified and referred to throughout this report as Pricilla Rendon, date of birth 11/29/83, pushed me and stated, "You fucking ass hole." I told Suspect Pricilla Rendon, date of birth 11/29/83, to get on the ground and advised her that she was under arrest. She responded with, "Fuck you asshole, you can't do shit."

I had in my right hand my expandable baton in the expanded position. I advised subjects to get on the ground and stop fighting. While telling the subjects to lay on the ground, a large, tall male, later identified and referred to throughout this report as John Nunez, date of birth 01/29/66, came charging at me. There were two females holding onto him around his waist and on his left arm attempting to pull him away if me. Nunez began yelling, "You can't fucking do this you asshole, you can't fucking do this." I advised Nunez to stay back and do not approach. Nunez was able to break free from the two females who were holding his back and charged at me. I immediately took a bladed stance, advised Nunez to step back, at this time Nunez closed both his left and right clenched fists and charge the at me. Nunez pulled his right-closed fist away from him as if to gain distance for momentum for a forward strike. I utilized a forward strike with my expandable baton to the lower leg of Suspect Nunez in a forward and backward direction. Suspect Nunez was struck with the baton, however, continued to advance on me. Suspect Nunez struck me in the chest with a forward closed fist strike.

After striking me in the chest, I applied additional strikes to Suspect Nunez with my expandable baton. Suspect Nunez fled to the back of the residence. I continued following Nunez to the back of the residence at which time I advised him that he was under arrest and to lie on ground. Nunez stated, "Fuck you." Nunez began yelling, "My family are cops you fucking ass hole. You can't do this to me."

I could hear Suspect David Rendon, date of birth 10/02/54, yelling at me off to the side as I was trying to take Suspect John Nunez into custody. Suspect David Rendon began yelling, "I know Jerry Dyer personally." David Rendon, date of birth 10/02/54, went on stating, "You wait until I call Jerry, you fucking ass hole. You wait. Jerry's not gonna stand for this. You can't come into my house."

I continued my commands to Suspect John Nunez, date of birth 01/29/66, and told him to get on the ground. As Nunez was seated on the couch, he used his left and right hand to lift him sell off the couch slightly and thrusted a forward kick at me. I utilized a forward and backward strike with the expandable baton to the left leg of Suspect Nunez. The strikes were placed in the desired area and received the desired effect. Nunez immediately placed himself on the ground at which time I was able to place handcuffs on him. While doing so, I felt a subject kick me in the back. I immediately took a standing position and looked toward the front door. I noticed that the front door was now open where it had not been when I first forced into the residence.

I began yelling for officers to assist me inside of the residence. As officers entered the residence, I began directing them to subjects who had assaulted me. Suspect Alfred Hernandez, date of birth 01/01/77, and Suspect Lorenzo Nunez, date of birth 07/14/80, were in the living room with the females yelling at me. Suspect Lorenzo Nunez and Suspect Alfred Hernandez stood in front of Suspect Gabriel Rodriguez, date of birth 09/15/73, in an attempt to keep officers from placing handcuffs on them. The subjects were moved out of the way at which time Gabriel Rodriguez was taken into custody, along with his wife, Priscilla Rose Rendon, date of birth 11/29/83.

Assisting members responded inside the location at which time I responded to Suspect John Nunez, date of birth 01/29/63, location. I had previously handcuffed John Nunez and began walking him out of the residence. While walking Nunez out of the residence, I placed him on the ground away from other subjects and with an officer that was going to standby with him.

While walking back into the residence to police additional suspects in custody whom I had observed physically

striking me and Sergeant Manfredi, I began walking up the porch. A Hispanic male, later identified and referred to throughout this report as Ricardo Rendon, 02/08/79, immediately lunged from the front porch area toward me and struck me with a left closed fist on the right side of my face causing the inner portion of my upper lip to receive an injury.

I immediately used a leg sweep, placed Suspect Ricardo Rendon, date of birth 02/08/79, on the ground and in custody. I responded inside with assisting members and began identifying the suspects who had assaulted me.

I identified Suspect David Anthony Rendon, date of birth 10/09/73, as the person who had initially struck me while I was attempting to assist Sergeant Manfredi from his act. I also identified inside the residence Lawrence Rendon, date of birth 04/30/75, who had struck me and Sergeant Manfredi. Suspect David Anthony Rendon, date of birth 10/09/73, was taken into custody as laid on the ground and placed his hands behind his back. Suspect Lawrence Rendon, however, did not comply in a similar manner. We used a front leg sweep and placed Suspect Lawrence Rendon on the ground and in custody.

I directed officers to place handcuffs on Alfred Hernandez and Lorenzo Nunez as well.

Also inside the location, Suspect Gabriel Rodriguez was taken into custody.

While inside of the residence, I directed officers to place handcuffs on Suspect David Rendon, date of birth 10/02/54. Suspect David Rendon, date of birth 10/02/54, began stating, "You call yourself a fucking Mexican, you dirty mother fucker. You call yourself a Mexican. How dare you come into my house. This is my house. You need a warrant you mother fucker." Suspect David Rendon, date of birth 10/02/54, was removed from the residence and taken and booked into the Fresno County Jail. All subjects were taken to the Identification Bureau for processing, however, I directed officers to take Suspect Gabriel Rodriguez, Suspect John Nunez, and Suspect Lawrence Rendon to University Medical Center to be medically evaluated for injuries they received during the strike with the expandable baton.

For additional information regarding additional assaults, refer to Sergeant Manfredi's Follow-up Report.

For statements and officers' observations, refer to assisting members Follow-up Reports.

The main suspects were transported to the Identification Bureau where they were processed and positively identified by fingerprints. The suspects were later transported and booked into the Fresno County Jail on the listed charges.

I did complete and faxed the Probable Cause Declarations for each of the suspects arrested on felony crimes to the Fresno Municipal Court.

While at the Identification Bureau, all suspects were photographed, excluding Suspect Pricilla Rendon and Suspect George Rendon, who were booked into the Fresno County Jail prior to being processed.

Identification technicians responded to the scene and did photograph the residence. Inside of the residence were numerous empty bottles of alcoholic beverages. There were also numerous opened bottles of cans of beer inside of the residence. Photographs were taken of that area.

Photographs were also taken of the suspects' injuries and photographs were taken of Sergeant Manfredi and myself.

## CONCLUSIONS/DEDUCTIONS:

On 05/06/05, Sergeant Manfredi and I were moments away from a disturbance in progress. As we arrived, we observed subjects throwing chairs and bottles inside of the front yard of the residence. A large disturbance occurred and we attempted to stop the disturbance. However, the unruly subjects, approximately 50 subjects outside of the front yard and inside of the residence, turned their aggression and anger toward officers. Suspects used closed fists and kicks to assault police officers.

Suspect Ralph Rendon attempted to remove Sergeant Manfredi's firearm from his holster and was able to slightly lift the firearm from the holster position.

As I was attempting to assist Sergeant Manfredi with the attack on him, I was assaulted from the side by numerous subjects who were used closed fists to strike me in the head. A group of people pulled me into the residence and locked me in as other subjects ran up kicking and striking me while inside of the residence. Numerous commands were given to stop with negative results from everyone.

The suspects locked the front door while I was inside the residence to avoid officers entering and assisting me during the attack. While inside of the residence, numerous subjects continually ran up, struck me, and would run away as I was attempting to defend myself.

## DISPOSITIONAL INFORMATION:

1.   Refer to the Identification Bureau's Follow-up Report for information.

2.   Refer to Sergeant Manfredi's Follow-up Report.

3.   Refer to assisting members' reports.

4.   I completed and faxed the Probable Cause Declarations.

5.   Photographs were taken.

6.   Lieutenant Marmolejo was advised.

7.   Sergeant Manfredi and myself both received numerous injuries during the disturbance, including injuries of scratches and abrasions, bruising, and injury to the back of both Sergeant Manfredi and myself.

**RELATED REPORTS**

CITE PD:1479909 Comment:

# DRAFT

## LAW ENFORCEMENT REPORT FORM
### FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

Event: 05AI3386                                   CA0100500                    Supplement - Case: 05-021148

### INCIDENT INFORMATION

Report #: 9 of 10     Report Type: PERS CRIME     District: SE  Sector: D     Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat     Occurred To:     Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

### CASE FACTORS

SPECIAL FACTORS
      ADDITIONAL INFO
SOLVABILITY FACTORS
      ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
      ELECTRONIC REPORT
INVESTIGATION
      SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
      VICTIM WILL PROSECUTE

### APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 2:47:21 PM     Printed By: BALLESTEROZ (V2435), GUY(P437)  Printed From: ROB206
Rpt #: 9     Type: SUPP Report Time: 0     Investigation Time: 0     Officer: MANFREDI (V3312), MICHAEL #S92
Clerk: MANFREDI (V3312), MICHAEL #S92  Created: 03/07/05 04:43  Filed Date: 03/05/05 23:59
Assigned Date: 03/07/05 04:43     Typed By: T535     Date Typed: 3/7/2005
Routing: None

### MO

PLACE OF ATTACK
      OTHER
SURROUNDING AREA
      RESIDENTIAL
STRUCT-RESIDENCE
      HOUSE

### OTHER FACTORS

ATTACK METHOD
      STRONG ARM, THREATEN
PERSON CRIMES
      ASSAULT ON PEACE OFFICER

### NARRATIVE

***************NARRATIVE DICTATED***********************

CASE #05-21148.E9
SERGEANT MANFREDI. BADGE #S92

SOURCE OF ACTIVITY:

Officer: MANFREDI (V3312), MICHAEL #S92                                                    Page 1 of 5
Supervisor:

On 03/05/05, at 2359 hours, Officer Marcus Tafoya, Badge #1054, and myself were on uniform patrol and were in a marked patrol vehicle. We were on Kings Canyon at the intersection with Jackson when we heard Dispatch broadcast a call of a loud party with more than 50 subjects fighting. The location of the disturbance was at 4519 E. Mono.

Officer Tafoya and myself approached the location from the intersection with Jackson and from this distance (approximately a half block away) we could hear a loud disturbance coming from our west. As we drove toward the location, we could see both males and females quickly moving away from the location and other subjects moving toward the location. We could hear yelling and screaming. As we pulled toward the front of the residence, we saw approximately 20 subjects who were involved in a fight on the front elevated porch of the residence and into the front yard of the residence.

## INVESTIGATION:

I immediately called for Code 3 assistance due to the nature of the disturbance. I could see that the subjects involved were Hispanic males and females of ages that appeared to be early 20s to late 40s or early 50s. Several subjects were striking each other. There were other subjects who were attempting to pull each other into the residence and away from the residence. The subjects were also throwing objects at each other.

As Officer Tafoya and myself approached, we gave numerous commands for the subjects to stop fighting. The subjects failed to comply. Many of them were looking directly at us and could easily distinguish that we were officers from not only our uniforms, but our patrol vehicle, which was parked in front of the residence.

As we approached the front of the house, I also noticed that the front cement walkway and yard were wet and the ground was muddy.

The struggle was becoming more violent. Subjects were yelling and screaming. Officer Tafoya and myself now attempted to physically separate these persons to keep them from being injured. My concern was I saw an older Hispanic male and several females who were the middle of the disturbance.

I was standing on top of the raised porch of the residence facing toward the front door of the house. I was at the back edge of the steps. While I was attempting to separate two males, I felt someone strike me several times on the back of my head, upper neck, and left shoulder. It was the same time that a subject began moving toward me near the front door of the residence.

This subject, later identified as Ralph Rendon, looked directly at me, looked down toward my uniform looking toward the name tag and several service stars above it, looked back up toward me and then used his clenched right fist to punch me on the forehead area of my right temple and then a second quick punch to my right cheek.

I grabbed hold of Ralph Rendon using my left hand and began to pull him out toward me in order to take him into custody for the assault he had just committed on me. He now charged at me, along with Lawrence Rendon, who was to my left, and George Rendon, who was standing to my right. They lunged into me and the momentum now took me backward off of the porch. We fell several feet on to the pavement with me landing, striking my upper back, neck, and the back of my head with the subjects landing on top of me.

When we had fallen, Ralph Rendon was on top of me. I could now feel that he was grabbing for my pistol and was attempting to pull it out of the holster. The weapon started to move out of the holster, and I was yelling for Officer Tafoya advising him that the subjects were attempting to take my firearm.

Officer: MANFREDI (V3312), MICHAEL #S92　　　　　　　　　　Page 2 of 5
Supervisor:

While I was on the ground, I was being struck from the side and kicked on my left side (Officer Tafoya was to my right), and with Officer Tafoya's assistance, several subjects were pulled off, and I was now able to rollover on top of Ralph Rendon.

I could hear additional units arriving with overhead lights and sirens, and I could tell that the subjects were moving back in toward the residence. At this time, I lost sight of Officer Tafoya. I could, however, hear Officer Tafoya yelling for the subjects to quit fighting.

I was now on top of Ralph Rendon, who was face down and had his arms underneath him. I had retained control of my pistol, which I had now and taken out and was holding in my right hand. I did not know whether I had lost my expandable baton or pepper spray off my belt. I ordered Ralph Rendon several times to place his hands behind his back, but he failed to do so. I also realized that my radio was missing, and I could see that it was under Rendon on his left side with the cord wrapped around his left arm. I then advised Rendon to show me his hands, he failed to do so, but I was able to use my left hand to pull his left hand behind his back.

His right hand remained under his waist, and I did not know if he was armed with something that he had taken during the struggle with me, or if he had previously been armed.

While I was struggling to take Rendon into custody, several of his male and female family members kept charging at me yelling for me to let him go, and I advised them numerous times to step back. They were highly agitated and kept moving toward me and at gunpoint, I was attempting to keep them back since I did not know if they were armed. Rendon again was moving his hand under his waist. Fearing he was armed, I used the flat side of my department-issued pistol to make one quick light strike against the right side of Rendon's head. I gave him two more orders to place his hands behind his back, and he eventually complied now after the strike and put his right hand behind his back.

Officers were beginning to arrive, and I advised them to go and assist Officer Tafoya. Officer Chun arrived and I now was able to holster my pistol and handcuff Ralph Rendon. I left Rendon with Officer Chun while I now went inside the residence to assist officers who were attempting to take other subjects into custody.

Inside of the residence, subjects were yelling and screaming and were failing to cooperate with officers' commands to surrender. Officer Tafoya advised officers to take Lawrence Rendon into custody as he was attempting to walk away toward the back of the residence (back door that led to a stairway that led to the top of the residence).

I gave Lawrence Rendon commands to stop and put his hands behind his back. He refused and kept attempting to walk away. I used my left hand to grab his right wrist and ordered him to surrender. He failed to do so and attempted to pull away. I now pulled the subject toward me and utilized a leg sweep and lowered Rendon to the ground. I had him roll onto his stomach, and I then handcuffed him without further incident.

The subjects inside the residence, the males and females, were yelling and screaming at officers and were attempting to keep officers from arresting their friends and family members. The subjects with the assistance of numerous officers were eventually taken into custody.

After the residence was secured, the prisoners were transported to the Identification Bureau for processing. A couple the subjects remained too combative and uncooperative to process and were immediately transported byOfficer Flick to the Fresno County Jail.

The subjects who had been arrested at the Mono address were transported to the Identification Bureau by a combination of officers and the patrol wagon. When Officer Tafoya and myself arrived at the Identification Bureau, I could hear that the male subjects who were being detained in the back holding cells were cussing at the officers and referring to the female officers as "bitches." They were relating that officers appeared to be scared of them and were making general threats of assaulting the officers.

I went back into the Identification Bureau holding area and saw that the two subjects who were the most vocal, who were appeared to be attempting to rile the other subjects, was David Rendon (guard for CDC) and Ralph Rendon. Ralph Rendon was by himself in the center holding cell and all the males were in the other far right holding cell, which is the largest of the three cells. I advised the subjects to quit their harangue and to cooperate with the processing. David Rendon advised that he would like to see me out of the uniform and deal with me at that time. He promised that he would see me again after this incident.

The same type of threats were being made by Ralph Rendon. Ralph Rendon related that when officers attempted to take him out of the cell that he intended to assault them.

I felt it was necessary at this time to remove both of the subjects from this holding area and to transport them to holding cells on the main level of Headquarters. I felt that from their behavior, the way they were being verbally aggressive and threatening toward officers that they would impede the safe processing the other prisoners and be a danger to the officers and staff of the Identification Bureau.

I initially removed David Rendon from the holding cell. He was not physically confrontational, but again made comments that he would see officers again and that at that time he would make sure that the officers were not in uniform. After he was taken upstairs, we now went to remove Ralph Rendon from the holding cell. Prior to opening the doors, he stepped directly in front of the door, balled his fists, and assumed a combative stance. He said that he would attack me as soon as the door opened.

I opened the door and he made a false lunge forward. At this time, I simply placed my hands on the subject's shoulders, spun him around, and quickly moved him toward the back wall of the holding cell. I placed his chest and upper torso up against the back wall. I told him to place his hands behind his back. I now had to manipulate his hands, place them behind his back, and handcuff him.

After this was done, Ralph Rendon was now also walked up to the holding cells on the main level of Headquarters.

Approximately 30 minutes after this, I walked back toward the holding area where Ralph and David Rendon were being detained. They were talking back and forth to each other (There is a cement wall in between the cells. The front of the cells have cages and the subjects can talk back and forth amongst each other and the conversation can be heard from a distance away.)

As I walked into the room, the subjects could not see that I had entered the holding area. David Rendon was telling Ralph, "Yeah, if the sergeant would have tried to have done me like that, I would have fucked him up." He was going on again to advise that he would deal with me at a later time.

I now approached both subjects and attempted to get information from David Rendon regarding his status with CDC. Ralph Rendon looked at me and all he said was, "Fuck you man, I ain't got nothing to say to you."

I now spoke to David Rendon. He looked at my name tag and said that he knew who I was. He also said that he

hoped to see me again some other time and would like to see me out of uniform. I took this as a threat. They intended later retaliation. I asked him his status. He said that he worked for Soledad and that I could call the warden. He threw out a name that I could not make out and said that the CDC system would not do anything to him. I asked to confirm his name. He looked at me and said, "Get it off the fucking booking sheet," and then said he had nothing further to say to me.

I confirmed the subject's name and that he did work for CDC Soledad. I contacted the Soledad watch commander, Lieutenant Schlosser, and advised him of the arrest.

## CONCLUSIONS/DEDUCTIONS:

On 03/05/05, at approximately 2359 hours, there was a broadcast call of subjects fighting at the residence at 4519 E. Mono. Officer Tafoya and myself arrived and saw a large disturbance transpiring in front of the residence. We attempted to intervene by physically pulling subjects apart after they refused our commands to stop fighting. I was struck several times in the back of the head and neck by Lawrence Rendon and then was punched twice in the face by Ralph Rendon. When I attempted to arrest Ralph Rendon, he, along with Lawrence and George Rendon, attacked me and tackled me to the ground. While on the ground, Ralph Rendon attempted to remove my firearm. With the assistance of Officer Tafoya, I was able to get off the ground and take Ralph Rendon into custody.

After the subjects were taken into custody, they were transported to the Identification Bureau. David Rendon and Ralph Rendon made further threats for later retaliation against officers. They remained uncooperative and verbally abusive and appeared to be attempting to incite the other prisoners. After they were removed from the crowd, the other prisoners were cooperative and complied with the booking process.

While Ralph Rendon was being processed, I. Bureau Technicians went to take overall photos of the subjects for any potential injuries. The subject began posing and also throwing gang signs. During the time in the field, as well as at the Identification Bureau, he began barking and also yelling, "Bulldogs" (Bulldogs is a violent street gang).

As a result of the assault by the subjects, I suffered several minor injuries. I had moderate pain to the back of the head and neck and upper back. I had several scratches on the forearms, legs, and bruising on the upper-left thigh. I also had sharp pains in the left trigger finger and right finger and moderate swelling of the right hand. (Injuries photographed by the I. Bureau Technicians.)

## DISPOSITIONAL INFORMATION:

1. Probable Cause Declarations were completed and faxed by Officer Tafoya.

2. See Original Report by Officer Anaya and follow-ups by Officer Tafoya, Officer Escareno, and Officer Stockdale.

# LAW ENFORCEMENT REPORT FORM
## FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

Event: 05AI3386        CA0100500        Supplement - Case: 05-021148

## INCIDENT INFORMATION

Report #: 2 of 9    Report Type: PERS CRIME    District: SE  Sector: D    Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat    Occurred To:    Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

## CASE FACTORS

**SPECIAL FACTORS**
     ADDITIONAL INFO
**SOLVABILITY FACTORS**
     ADULT BOOKED, ADULT CITED
**SPECIAL FACTORS**
     ELECTRONIC REPORT
**INVESTIGATION**
     SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
**FOLLOWUP**
     VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:47:35 AM    Printed By: BALLESTEROZ (V2435), GUY(P437)  Printed From: ROB206
Rpt #: 2    Type: SUPP  Report Time: 0    Investigation Time: 0    Officer: STOCKDALE (V3628), RYAN #P1286
Clerk: STOCKDALE (V3628), RYAN #P1286  Created: 03/06/05 01:49  Filed Date: 03/05/05 23:59
Assigned Date: 03/06/05 01:49
Approved By: PALOMINO (V3900), MIKE #S13        Date Approved: 3/6/2005 10:59:48 AM
Routing: None

## NAMES

Inv: ARRESTED # 1    Adult/Juvenile: A  Type: PERSON
Name: RENDON, RALPH
Race: H    Sex: M    DOB: 07/18/1981    Age: 23    Height: 505  Weight: 150  Hair: BLK  Eyes: BRO
Language: ENGLISH    PD#: 143364    Birth City: FRESNO    Birth State: CA    Suspect Status: ARR

| Physical Desc: | Category | Type |
|---|---|---|
| | BODY BUILD | MEDIUM |
| | COMPLEXION | MEDIUM |
| | EMOTIONAL STATE | ANGRY |
| | EMOTIONAL STATE | THREATENING |
| | HAIR LENGTH | SHAVED |
| | WEAPON | FISTS |

AKA Name: RENDON    First: RALPH    Middle: CHRISTOPHER
AKA Name: RENDON    First: GEORGE

| Scars, Marks and Tattoos: | Location | Feature | Description |
|---|---|---|---|
| | ARM LEFT | TATTOO | BULLDOG HEAD |

Identification: PI - D1528566 - CA | OA - 143364 - FPD

***** Charge Information *****

| Section | Code | Lvl | Description | Counts | Bail | Warrant |
|---|---|---|---|---|---|---|
| 415(1) | PC | M | FIGHT IN PUBLIC PLACE | 1 | | |
| 148(A)(!) | PC | M | OBSTRUCT/ETC PUB OFCR/ETC | 1 | | |

Officer: STOCKDALE (V3628), RYAN #P1286        Page 1 of 4
Supervisor: PALOMINO (V3900), MIKE #S13

## FRESNO POLICE DEPARTMENT

Event: 05AI3386         CA0100500         Supplement - Case: 05-021148

| | | | | | |
|---|---|---|---|---|---|
| 69 | PC | F | OBSTRUCT/RESIST EXEC OFF | 1 | |
| 148(D) | PC | F | ATT RMV/ETC F/ARM:PO/ETC | 1 | |
| 243(C)(2) | PC | F | BATTERY AGAINST PO | 1 | |

Section: 415(1)    Judicial District: FRESNO
Section: 148(A)(1)    Judicial District: FRESNO
Section: 69    Judicial District: FRESNO
Section: 148(D)    Judicial District: FRESNO
Section: 243(C)(2)    Judicial District: FRESNO

Inv: VICTIM # 1    Type: STATE OF CALIFORNIA
Name: STATE OF CALIFORNIA, CALIFORNIA

### MO

**PLACE OF ATTACK**
     OTHER
**SURROUNDING AREA**
     RESIDENTIAL
**STRUCT-RESIDENCE**
     HOUSE

### OTHER FACTORS

**ATTACK METHOD**
     STRONG ARM, THREATEN
**PERSON CRIMES**
     ASSAULT ON PEACE OFFICER

### NARRATIVE

**NAMES OF MEMBERS WHO CAN TESTIFY:**
SGT. M. MANFREDI #S92
M. TAFOYA #1054
E. ESCARENO #808

**SOURCE:**
ON 3/6/05 I WAS ON UNIFORM PATROL IN SOUTHEAST DISTRICT. AT 0000 HRS I WAS
DISPATCHED TO 4519 E. MONO IN REGARDS TO A PHYSICAL DISTURBANCE. I RESPONDED TO
THIS LOCATION CODE 3 AS PER THE REQUEST OF SGT. M. MANFREDI #S92 WHO WAS ALREADY
ON SCENE.

**INVESTIGATION:**
I ARRIVED AT THE LOCATION AT 0001 HRS AND EQUIPPED MYSELF WITH A LESS LETHAL
SHOTGUN. I OBSERVED SGT. MANFREDI ON THE GROUND WITH A MALE SUBJECT DETAINED
IN FRONT OF THE LOCATION. SGT. MANFREDI HAD DEBRIS AND DIRT ON HIS UNIFORM DUE TO
HIS PHYSICAL INVOLVEMENT WITH THIS SUBJECT.

THERE WERE APPROX 10-12 SUBJECTS CLOSELY AROUND SGT. MANFREDI AT THIS TIME. I
COVERED SGT. MANFREDI WITH MY LESS LETHAL SHOTGUN KEEPING ALL OF THE SUBJECTS
AWAY FROM HIM. I FELT THAT SGT. MANFREDI WAS VULNERABLE TO FURTHER ATTACK IN
THIS POSITION.

SGT. MANFREDI HANDCUFFED THE DETAINED SUBJECT AND MOVED HIM TO THE SIDE. I HAD TO CONSTANTLY TELL SEVERAL SUBJECTS TO STAY BACK AND KEEP OUT OF THE WAY. THERE WAS A LARGE AMOUNT OF COMMOTION AND ARGUING GOING ON.

I MOVED INTO THE HOUSE WITH OFFICER TAFOYA AND ESCARENO TO CONTROL THE SITUATION INSIDE. WHILE INSIDE I CONSTANTLY TOLD EVERYONE TO STAY BACK AND SIT DOWN. ONCE ASSISTING OFFICERS ARRIVED, I TOOK CUSTODY OF RALPH RENDON AS PER SGT. MANFREDI. RENDON WAS THE SUSPECT WHO ATTACKED SGT. MANFREDI PRIOR TO MY ARRIVAL. I READ RENDON HIS MIRANDA RIGHTS PER MY DEPT ISSUED CARD. RENDON SAID "YES" THAT HE UNDERSTOOD HIS RIGHTS AND WOULD SPEAK WITH ME.

### STATEMENT OF RENDON:
RENDON WAS AT HIS HOME DRINKING WITH FAMILY EARLIER. A GROUP OF "BULLDOGS" SHOWED UP AT THE LOCATION AND STARTED AN ALTERCATION. WHEN THE POLICE ARRIVED AT THE FRONT DOOR, RENDON DID NOT RECOGNIZE SGT. MANFREDI, OFFICER TAFOYA, AND ESCARENO AS POLICE OFFICERS, EVEN THOUGH THEY IDENTIFIED THEMSELVES AND WERE IN FULL UNIFORM.

RENDON THOUGHT THAT THE OFFICERS WERE A FURTHER THREAT FOR AN UNKNOWN REASON AND ATTACKED THEM WITH HIS FISTS. RENDON CONTINUALLY RESISTED AND FOUGHT WITH SGT. MANFREDI BECAUSE HE THOUGHT HIS FATHER WAS IN TROUBLE. RENDON ATTEMPTED TO REMOVE WHAT WAS IN SGT. MANFREDI'S HAND (SGT. MANFREDI'S FIREARM) BECAUSE HE FELT THREATENED. RENDON COULD NO ELABORATE ON ANYTHING FURTHER IN REGARDS TO THIS INCIDENT.

### INVESTIGATION CONT:
RENDON WAS BROUGHT TO I-B WHERE HIS REMAINED EXTREMELY IRATE AND ABUSIVE TOWARD SGT. MANFREDI. I TRANSPORTED JOHN NUNEZ FROM I-B TO UMC FOR MEDICAL TREATMENT TO HIS LEG. NUNEZ SIGNED A MEDICAL WAIVER AND WAS TRANSPORTED TO FCJ FOR BOOKING.

### CONCLUSIONS/DEDUCTIONS:
RENDON IS IN VIOLATION OF PC 415(1) DISTURBING THE PEACE, PC 148(A)(1) OBSTRUCTING AND RESISTING ARREST, PC 69 FELONY RESISTING A POLICE OFFICER, PC 148(D) ATTEMPTING TO REMOVE A FIREARM FROM A POLICE OFFICER AND PC 243(C)(2) FELONY BATTERY ON A POLICE OFFICER.

### DISPOSITION:
RENDON TRANSPORTED TO I-B.

SEE ORIGINAL AND F/U REPORTS FOR ADDITIONAL INFORMATION.

TRANSPORTED NUNEZ TO UMC AND FCJ.

⌦001   FRESNO POLICE

# LAW ENFORCEMENT REPORT FORM
## FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

Event: 05AI3386    CA0100500    Supplement - Case: 05-021148

## INCIDENT INFORMATION

Report #: 5 of 12    Report Type: PERS CRIME    District: SE   Sector: D    Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 00:15 Sat    Occurred To:    Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rev:: T

## CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY   Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/17/2005 11:06:54 AM   Printed By: FAIN (V2713), DIANNA(C160)   Printed From: PLO124
Rpt #: 5    Type: SUPP   Report Time: 0    Investigation Time: 0    Officer: ANAYA (V3558), BELINDA #P1204
Clerk: ANAYA (V3558), BELINDA #P1204    Created: 03/06/05 04:17   Filed Date: 03/05/05 23::9
Assigned Date: 03/06/05 04:17    Typed By: P1204   Date Typed: 3/7/2005
Approved By: KEENEY (V3652), MARK #S148    Date Approved: 3/8/2005 4:02:14 AM
Routing: None

## NAMES

Inv: Other # 1    Adult/Juvenile: A   Type: PERSON
Name: RENDON, HEATHER MARIE
Race: H    Sex: F    DOB: 09/08/1976   Age: 28    Height: 508  Weight: 140  Hair: BRO   Eyes: BRO
Language: ENGLISH

Inv: ARRESTED # 12    Adult/Juvenile: A   Type: PERSON
Name: MARTINEZ, LUPE ELEANOR
Race: H    Sex: F    DOB: 06/30/1980   Age: 24    Height: 503  Weight: 180  Hair: BLK   Eyes: BRO
Comments: 5 MONTHS PREGNANT
Language: ENGLISH    Clothing: PINK SHIRT, BLUE JEANS   Crime Type: 148(A)(1)    Suspect Status: ARR
Identification: DL - B7612213 - CA

Officer: ANAYA (V3558), BELINDA #P1204    Page 1 of 4
Supervisor: KEENEY (V3652), MARK #S148

# FRESNO POLICE DEPARTMENT

Event: 05AI3386                                 CA0100500                        Supplement - Case: 05-021148

## NAMES

Inv: CITED # 1      Adult/Juvenile: A   Type: PERSON
Name: RODRIGUEZ, REBECCA
Race: H      Sex: F        DOB: 08/07/1976   Age: 28      Height: 506  Weight: 120 Hair: BRO   Eyes: BRO
Language: ENGLISH          Clothing: BLUE JEANS, MAUVE SHIRT      Crime Type: 243(B)           Suspect Status: ARR
Scars, Marks and Tattoos:  Location              Feature               Description
                           KNEE                  SC                    RIGHT 2"
Identification: DL - B5754082 - CA



***** Charge Information *****

| Section  | Code | Lvl | Description                | Counts | Bail | Warrant |
|----------|------|-----|----------------------------|--------|------|---------|
| 148(A)(1)| PC   | M   | OBSTRUCT/ETC PUB OFCR/ETC  | 1      |      |         |
| 243(B)   | PC   | M   | BATT PO/EMERG PRSNL/ETC    | 1      |      |         |
| 415(1)   | PC   | M   | FIGHT IN PUBLIC PLACE      | 1      |      |         |

Inv: REPORTING PARTY # 1    Adult/Juvenile: A   Type: PERSON
Name: RENDON, NASARIA DIANE JR
Race: H      Sex: F        DOB: 02/12/1956   Age: 49      Height: 506  Weight: 150 Hair: BRO   Eyes: BRO
Language: ENGLISH
Identification: - -

## MO

PLACE OF ATTACK
    OTHER
SURROUNDING AREA
    RESIDENTIAL
STRUCT-RESIDENCE
    HOUSE

## OTHER FACTORS

ATTACK METHOD
    STRONG ARM, THREATEN
PERSON CRIMES
    ASSAULT ON PEACE OFFICER

## NARRATIVE

## FOLLOW UP INVESTIGATION:

## OFFICERS WHO CAN TESTIFY:
Sgt Manfredi #S92 (See follow up report)
Officer Tafoya #1054 (See original report)
Officer Mclelland #1328 (See follow up report)
Officer Anaya #1204
Officer Escareno #808

## SOURCE:
On 03-06-05, at about 0000 hours, while working uniformed vehicle patrol as a single unit, I was dispatched to
4519 E Mono Av. regarding a loud disturbance and subjects fighting at the location. While enroute, units who

Officer: ANAYA (V3558), BELINDA #P1204                                                          Page 2 of 4
Supervisor: KEENEY (V3652), MARK #S148

had already arrived requested additional units to respond at an emergency response (code three). I arrived at about 0005 hours.

## INVESTIGATION:
Upon arrival, I noticed several subjects in front of and inside the residence who were yelling and screaming at officers who were on scene. I saw Sgt Manfredi was near the front door to the residence and was trying to take a male subject in custody (later identified as S-Ralph Rendon). The male subject was resisting arrest while he was being handcuffed. There were approximately 30-35 subjects who were involved in the disturbance.

I saw a female, later identified as S-Lupe Martinez, standing approximately 12 feet away from the struggle. S-Martinez yelled at me, "what the hell are you doing here...you can't be on my property!"  She then blocked my path as I was trying to assist Sgt Manfredi. Based on what S-Martinez was yelling, and the fact that she was moving towards me, I thought she was going to assault me. I ordered her to stay back and to sit down on the ground. She continued to yell and refused to sit down. I was delayed and unable to assist the other officers because of S-Martinez's actions. I put my left hand on her left shoulder and tried to move her to sitting position. She refused to sit down and again moved towards me and blocking me from assisting other officers who were struggling with suspects. Officer Tafoya assisted me on handcuffing S-Martinez who was yelling "I'm pregnant..and your gonna cuff me!"  S-Martinez stated she had no injuries and had no complaint of pain. S-Martinez was later transported to IB by the security wagon.

I contacted RP-Nasaria Rendon (standing by the front door) who stated she was the home owner of the residence and she stated the following:

## STATEMENTS FROM RP-NASARIA RENDON:
Rendon stated she had been drinking on the above date because her son had just returned from Iraq. She was upstairs when she heard yelling coming from outside. The front door was wide open and when she walked down stairs she could see "everyone fighting" .

When she walked out the front door, she saw her husband David Rendon holding a water hose squirting everyone on the front lawn and she even got wet. She believes she called the police but was unsure which phone she used. She called police so they could stop the fighting. She cannot recall what subjects were fighting in the front lawn and only recalled "several subjects" who were involved. She cannot recall what else happen at this time and was unsure if officers were there when David was wetting the involved parties.

I contacted O-Heather Marie Rendon (standing by the front door) who stated the following:

## STATEMENTS FROM O-HEATHER RENDON:
O-Rendon stated she was standing inside the front door of the residence when she heard a disturbance. She was unable to see who started the disturbance and only remembers "everyone was fighting before officers arrived". The party was for her brother George Rendon who just just returned from Iraq. She does not live at the residence and was at the location for the celebration.

She believes a hispanic male by the name of "Rudy" had started the fight with an unknown male subject (cannot recall the name at this time). She also had been drinking. She did not have any additional information at this time.

## INVESTIGATIONS CONT:
I assisted Officer Escareno with a female search on scene. The suspect female Escareno had in his marked

vehicle is later identified as S-Rebecca Rodriguez. S-Rodriguez stated the blood stain she had on her shirt and pants came from her husband (S-Gabriel Rodriguez) who was involved in the disturbance. I looked underneath her pants (calf area) to see if I could see any visible injuries (since there was a small amount of blood near her right knee area. I did not see any visible injuries on S-Rodriguez leg area. I asked her if she had fallen or was she struck by anyone. S-Rodriguez stated she had fallen on top of her husband during the struggle. She said the stain of blood on her came from her husband who was injured. She did not want to seek medical attention.

Officer Escareno transported S-Rodriguez to IB for processing. While we were there, I noticed S-Rodriguez right leg was swollen. I advised her I was going to call for EMS to respond to check her injuries. S-Rodriguez did not want to be seen. When EMS arrived at IB, S-Rodriguez stated the injury on her leg was caused by the way she attempted to stop the subjects fighting . S-Rodriguez stated she was struck by one of the officer's baton on her back. I advised her why didn't she tell me about her injuries when I first asked and she did not answer me. IB took photos of S-Rodriguez injuries. Please see IB tech follow up regarding S-Rodriguez's injuries. S-Rodriguez was cited and released at IB.

## CONCLUSIONS/DEDUCTIONS:
Officers were dispatched to a disturbance call where officers were assaulted. S-Lupe Martinez moved towards me and attempted to block me when I tried to assist officers in a struggle. She refused to obey my lawful commands to stay away from me and to sit down on the ground, in violation of PC 148(a)(1).

Please see original report for additional information.

## DISPOSITION:
1. Officer Wilcox #1208 assisted me and cited S-Rebecca Rodriguez at IB for PC 243(b), 148(a)(1), and 415(1). Citation #1479909.

2. Please see original report.

**RELATED REPORTS**

CITE PD:1479909 Comment:

## LAW ENFORCEMENT REPORT FORM
### FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

| Event: 05AI3386 | CA0100500 | Supplement - Case: 05-021148 |
|---|---|---|

### INCIDENT INFORMATION

Report #: 3 of 9      Report Type: PERS CRIME      District: SE   Sector: D      Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

### CASE FACTORS

**SPECIAL FACTORS**
    ADDITIONAL INFO
**SOLVABILITY FACTORS**
    ADULT BOOKED, ADULT CITED
**SPECIAL FACTORS**
    ELECTRONIC REPORT
**INVESTIGATION**
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
**FOLLOWUP**
    VICTIM WILL PROSECUTE

### APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY   Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:47:55 AM      Printed By: BALLESTEROZ (V2435), GUY(P437)   Printed From: ROB206
Rpt #: 3      Type: SUPP   Report Time: 0      Investigation Time: 0      Officer: SOLIS, SHANDRA #ID62
Clerk: SOLIS, SHANDRA #ID62  Created: 03/06/05 03:00   Filed Date: 03/05/05 23:59      Assigned Date: 03/06/05 03:00
Approved By: MAY (V3812), JANET #ID24                      Date Approved: 3/6/2005 5:00:30 PM
Routing: None

### MO

**PLACE OF ATTACK**
    OTHER
**SURROUNDING AREA**
    RESIDENTIAL
**STRUCT-RESIDENCE**
    HOUSE

### OTHER FACTORS

**ATTACK METHOD**
    STRONG ARM, THREATEN
**PERSON CRIMES**
    ASSAULT ON PEACE OFFICER

### NARRATIVE

030605 0041 HRS.
PHOTOGRAPHIC EVIDENCE: 35MM color negatives of the scene and the suspects and the victim's injuries
SUBJECT: NUNEZ, Lorenzo HMA DOB 071480 FPD #181787
SUBJECT: HERNANDEZ, Alfred HMA DOB 010177 FPD #163534
SUBJECT: RODRIGUEZ, Rebecca HFA DOB 080776 FPD #181789
SUBJECT: RENDON, David HMA DOB 100254 FPD #172827
SUBJECT: RENDON, Ricardo HMA DOB 020879 FPD #181791
SUBJECT: CENTENO, Vivian HFA DOB 083073 FPD #181792

Officer: SOLIS, SHANDRA #ID62                      Page 1 of 2
Supervisor: MAY (V3812), JANET #ID24

SUBJECT: MARTINEZ, Lupe Eleanor HFA DOB 063080 FPD #181793
SUBJECT: RENDON, David Anthony HMA DOB 100973 FPD #181790
SUBJECT: RENDON, Ralph HMA DOB 071881 FPD #143364

Detailed to the location of occurrence at the request of Officer Tafoya #1054. Upon arrival I took photos of the scene, which included the interior and exterior of the single story, South facing residence at that address. Interior and exterior photos of the residence were taken for ID purposes only.

Photos of the living room will show a refrigerator adjacent to the East wall. There was blood smeared on the refrigerator. Per Officer Tafoya, blood sample and control swabs were not collected.

I then took photos of Sergeant Manfredi's #S92 injuries. Photos will show swelling to his right hand. There were abrasions to his knees and arms. In addition, there was mud on his front and backside.

Upon my return to the I. Bureau, I took photos of the above listed subjects. Photos of NUNEZ will show blood on his shirt. Photos of HERNANDEZ, CENTENO and RENDON, David FPD #172827 were taken for ID purposes only.

Photos of RODRIGUEZ will show her right ankle to be swollen. There was an abrasion to her right arm and bruising to her left arm. In addition, there was blood on her clothing.

Photos of MARTINEZ will show an abrasion to her left elbow and redness to her wrists.

Photos of RENDON, Ricardo will show redness to the left side of his face, and an abrasion to his upper right arm. In addition, there was an abrasion and swelling to the back of his head.

Photos of RENDON, David Anthony FPD #181790 will show bruising to his right hand and an abrasion to his left upper arm.

Photos of RENDON, Ralph will show abrasions to his left arm and wrist. There was swelling to his head and red marks to his chest.

Photos were also taken of Officer Tafoya's injuries. Photos will show abrasions to his lips and arms. All photographic negatives will remain on file in the I. Bureau.

Officer: SOLIS, SHANDRA #ID62
Sup. reviewer: MAY (V3812) JANET #ID24

# DRAFT
## LAW ENFORCEMENT REPORT FORM
### FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

Event: 05AI3386                          CA0100500                          Supplement - Case: 05-021148

## INCIDENT INFORMATION

Report #: 4 of 9      Report Type: PERS CRIME      District: SE  Sector: D      Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

## CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class:: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:48:12 AM      Printed By: BALLESTEROZ (V2435), GUY(P437)   Printed From: ROB206
Rpt #: 4      Type: SUPP Report Time: 0      Investigation Time: 0      Officer: MCLELLAND (V3074), JENNIFER #P1328
Clerk: MCLELLAND (V3074), JENNIFER #P1328      Created: 03/06/05 03:14   Filed Date: 03/05/05 23:59
Assigned Date: 03/06/05 03:14
Routing: None

## NAMES

Inv: ARRESTED # 1      Adult/Juvenile: A  Type: PERSON
Name: CENTENO, VIVIAN V
Race: H      Sex: F      DOB: 08/30/1973  Age: 31      Height: 501  Weight: 120  Hair: BRO   Eyes: BRO
Crime Type: PC 148(A)(1) Suspect Status: ARR
AKA Name: CENTENO    First: VIVIAN    Middle: VICTORIA
Identification: DL - B5600031 - CA

## MO

PLACE OF ATTACK
    OTHER
SURROUNDING AREA
    RESIDENTIAL
STRUCT-RESIDENCE
    HOUSE

Officer: MCLELLAND (V3074), JENNIFER #P1328                                              Page 1 of 2

# DRAFT
## FRESNO POLICE DEPARTMENT

Event: 05AI3386      CA0100500      Supplement - Case: 05-021148

### OTHER FACTORS

ATTACK METHOD
     STRONG ARM, THREATEN
PERSON CRIMES
     ASSAULT ON PEACE OFFICER

### NARRATIVE

## FOLLOW UP INVESTIGATION:

## SOURCE:

On Sunday 03/06/05 I was working uniformed patrol with Officer Wilcox #1208, assigned to the Southeast District. At 1204 a request for Code 3 assistance was broadcast for officers to respond to a physical disturbance at 4519 E. Mono.

## INVESTIGATION:

We arrived on the scene and immediately saw officers trying to take a male suspect into custody outside the front door of the residence. The male was resisting arrest and several officers were trying to handcuff him. Approximately 30 subjects were at the scene.

I saw a female, later identified as Vivan Centeno standing approximately ten feet away from the struggle. Centeno yelled, "what are they doing, he didn't do anything!" She moved towards the area where officers were fighting with the male suspect. The other officers were engaged in a fight with the male suspect and Centeno was approaching them from behind. Based on what Centeno was yelling and the fact that she was moving towards the officers, I thought she was going to assault the other officers from behind. I ordered her, "stay back," and, "sit down on the ground." She continued to yell and refused to sit down. I was delayed and unable to assist the other officers because I could not turn my back on Centeno. I put my hand on her shoulder to hold her back from the officers and try to force her to sit down. She refused to sit down and again moved toward the area where officers were fighting with the male subject. I handcuffed Centeno and she sat down on the ground.

## CONCLUSIONS/DEDUCTIONS:

I arrived at a physical disturbance where officers had been assaulted. Centeno moved toward an area where officers were engaged in a physical struggle with a male suspect. She refused to obey my lawful commands to stay away from the struggle and to sit down on the ground, in violation of PC148(a)(1)

## DISPOSITION:

1. See origional report.

Officer: MCLELLAND (V3074), JENNIFER #P1328          Page 2 of 2
Supervisor:

# LAW ENFORCEMENT REPORT FORM
## FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

| Event: 05AI3386 | CA0100500 | Supplement - Case: 05-021148 |
|---|---|---|

## INCIDENT INFORMATION

Report #: 6 of 9      Report Type: PERS CRIME      District: SE  Sector: D      Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

## CASE FACTORS

SPECIAL FACTORS
      ADDITIONAL INFO
SOLVABILITY FACTORS
      ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
      ELECTRONIC REPORT
INVESTIGATION
      SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
      VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:48:50 AM      Printed By: BALLESTEROZ (V2435), GUY(P437)   Printed From: ROB206
Rpt #: 6      Type: SUPP  Report Time: 0      Investigation Time: 0      Officer: DURHAM (V3785), D. SCOTT #ID22
Clerk: DURHAM (V3785), D. SCOTT #ID22   Created: 03/06/05 07:19   Filed Date: 03/05/05 23:59
Assigned Date: 03/06/05 07:19
Approved By: MAY (V3812), JANET #ID24                                    Date Approved: 3/6/2005 4:40:12 PM
Routing: None

## MO

PLACE OF ATTACK
      OTHER
SURROUNDING AREA
      RESIDENTIAL
STRUCT-RESIDENCE
      HOUSE

## OTHER FACTORS

ATTACK METHOD
      STRONG ARM, THREATEN
PERSON CRIMES
      ASSAULT ON PEACE OFFICER

## NARRATIVE

030605  0200 HRS

PHOTOGRAPHIC EVIDENCE: 35mm color photos of three of the suspect's injuries.
SUSP #1: RENDON, Lawrence  HMA DOB: 043075  FPD #181788
SUSP #2: NUNES, John  HMA  DOB: 012966  FPD #122324
SUSP #3: RODRIGUEZ, Gabriel  HMA  DOB: 091573

At the above time and date, at the request of Officer Tafoya (#1054), I took photos of RENDON and NUNES

Officer: DURHAM (V3785), D. SCOTT #ID22                                    Page 1 of 2
Supervisor: MAY (V3812), JANET #ID24

at the I. Bureau. Photos of RODRIGUEZ were taken at UMC at 0547 hrs. Photos of RENDON will show swelling to the LFA, and welts on the back of the left thigh, and the side of the right knee. Photos of NUNES will show a welt on his right shin, and redness to both wrists/forearms. He also complained of pain in his right thigh, but refused photos. Photos of RODRIGUEZ will show a laceration to the top front of the head, and a welt on the left calf.

All photographic negatives will be on file in the I. Bureau under this case number.

## LAW ENFORCEMENT REPORT FORM
### FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

Event: 05AI3386                                         CA0100500                          Supplement - Case: 05-021148

### INCIDENT INFORMATION

Report #: 7 of 9      Report Type: PERS CRIME      District: SE  Sector: D      Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

### CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

### APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:49:09 AM      Printed By: BALLESTEROZ (V2435), GUY(P437)   Printed From: ROB206
Rpt #: 7      Type: SUPP  Report Time: 0      Investigation Time: 0      Officer: BARBERY (V3811), ROBERT #ID7
Clerk: BARBERY (V3811), ROBERT #ID7      Created: 03/06/05 10:01   Filed Date: 03/05/05 23:59
Assigned Date: 03/06/05 10:01
Approved By: MAY (V3812), JANET #ID24                              Date Approved: 3/6/2005 5:03:05 PM
Routing: None

### MO

PLACE OF ATTACK
    OTHER
SURROUNDING AREA
    RESIDENTIAL
STRUCT-RESIDENCE
    HOUSE

### OTHER FACTORS

ATTACK METHOD
    STRONG ARM, THREATEN
PERSON CRIMES
    ASSAULT ON PEACE OFFICER

### NARRATIVE

3-6-05 0935HRS.
PHOTOGRAPHIC EVIDENCE: 35mm color negatives of the suspect's injuries.

On this date, in the I-Bureau, at the request of Off. Medina #1216, I took photos of RODRIGUEZ, Gabriel FPD# 181795 DOB: 9-15-73. Photos will show that he had a sutured cut on the top front of his head, near the hair line. He also had a large bruise on the outside of his left leg, just below the knee. Stand up photos were also taken. All photographic negatives will be on file in the I-Bureau.

Officer: BARBERY (V3811), ROBERT #ID7                                                        Page 1 of 2
Supervisor: MAY (V3812), JANET #ID24

LAW ENFORCEMENT REPORT FORM
FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000

| Event: 05AI3386 | CA0100500 | Supplement - Case: 05-021148 |
|---|---|---|

## INCIDENT INFORMATION

Report #: 8 of 9      Report Type: PERS CRIME      District: SE  Sector: D      Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From:: 03/05/05 23:59 Sat      Occurred To:      Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rcv:: T

## CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY  Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 8:49:42 AM     Printed By: BALLESTEROZ (V2435), GUY(P437)  Printed From: ROB206
Rpt #: 8      Type: SUPP  Report Time: 0      Investigation Time: 0      Officer: JAUREGUI (V3098), JOSE #P1172
Clerk: JAUREGUI (V3098), JOSE #P1172      Created: 03/06/05 21:26  Filed Date: 03/05/05 23:59
Assigned Date: 03/06/05 21:26     Typed By: 08433   Date Typed: 3/6/2005
Report Dictated
Approved By: KEENEY (V3652), MARK #S148                        Date Approved: 3/7/2005 3:43:34 AM
Routing: None

## MO

PLACE OF ATTACK
    OTHER
SURROUNDING AREA
    RESIDENTIAL
STRUCT-RESIDENCE
    HOUSE

## OTHER FACTORS

ATTACK METHOD
    STRONG ARM, THREATEN
PERSON CRIMES
    ASSAULT ON PEACE OFFICER

## NARRATIVE

****************NARRATIVE DICTATED************************

## CASE #05-21148.E8
## OFFICER JAUREGUI. BADGE #1172

## SOURCE OF ACTIVITY:

Officer: JAUREGUI (V3098), JOSE #P1172                                   Page 1 of 2
Supervisor: KEENEY (V3652), MARK #S148

On Saturday, 3-5-05 at approximately 0015 hours, Officer M. Chun (Badge #1161) and I were working uniform patrol in a marked patrol vehicle assigned to the Southeast Policing District as 3I21, a double unit. We were dispatched to 4519 E. Mono in regards to a disturbance involving approximately 50 subjects fighting in front of the location. Officers who had arrived on scene requested Code-3 assistance(emergency response) to the location due to the disturbance.

## INVESTIGATION:

Upon arrival to the location, I observed several subjects in front of the location being detained by officers. There were several subjects yelling and cussing at police. As I approached the residence, I observed a Hispanic male subject, later identified as Lorenzo Nunez attempting to leave the residence, heading eastbound on Mono. The subject was yelling profanity and appeared to be very upset. I approached the subject as he was attempting to walk away from the location. I asked the subject to stop walking and turn around so I could talk to him. The subject turned, looked at me and then turned back around and continued walking eastbound on East Mono.

I could hear the subject saying, "Fuck you! Fuck this shit." He began to walk away faster from me. I again ordered the subject to stop and the subject refused, he continued to walk eastbound on east Mono. I caught up to the subject and for the third time told him to stop where he was at. The subject refused and continued to walk. At that point, Officer Van Dalen approached the subject and with the use of the department issued Less Lethal shot gun, ordered the subject to the ground. The subject immediately complied with our demands at that point and I was able to place the subject in handcuffs.

Suspect Nunez was taken back to the location of occurrence and was seated in the front yard of the residence. Upon further investigation, Officer Tafoya advised me that Suspect Nunez was involved in the disturbance at the location. Suspect Nunez was then put into a patrol vehicle and transported to Identification Bureau for processing. Suspect Nunez was in violation of PC 148(a)(1) and PC 415(1).

## CONCLUSIONS/DEDUCTIONS:

None.

## DISPOSITIONS:

1.   Please refer to the original report for additional information regarding this case.

2.   Suspect Lorenzo Nunez was placed under arrest, transported to Identification Bureau for processing and subsequently booked into Fresno County Jail on the above charges.

3.   I can testify to this report.

# DRAFT
## LAW ENFORCEMENT REPORT FORM
### FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000
CA0100500

Event: 05AI3386                                      Supplement - Case: 05-021148

## INCIDENT INFORMATION

Report #: 10 of 10    Report Type: PERS CRIME    District: SE  Sector: D    Zone: 2660
Definition and Class: PC243(C)(2) - BATTERY AGAINST PO - Lvl F
Occurred From: 03/05/05 23:59 Sat    Occurred To:    Received Date: 03/05/05 23:59 Sat
Location: 4519 E MONO AV FRESNO
Cross Street: S BARTON AV
How Rev:: T

## CASE FACTORS

SPECIAL FACTORS
    ADDITIONAL INFO
SOLVABILITY FACTORS
    ADULT BOOKED, ADULT CITED
SPECIAL FACTORS
    ELECTRONIC REPORT
INVESTIGATION
    SCENE PROCESSED BY IBUREAU, SUSP INJURIES PHOTOGRAPHED
FOLLOWUP
    VICTIM WILL PROSECUTE

## APPROVALS AND ROUTING

Close Class: 4D2 - SIMPLE BATTERY   Open Class:: 1E4
UCR Class: 4500 - OTHER ASSAULTS-SIMPLE/ NON-AGGRAVATED
Premise: RE
Printed: 3/7/2005 2:03:56 PM   Printed By: BALLESTEROZ (V2435), GUY(P437)   Printed From: ROB206
Rpt #: 10    Type: SUPP  Report Time: 0    Investigation Time: 0    Officer: MALDONADO (V3198), MANUEL #P578
Clerk: MALDONADO (V3198), MANUEL #P578    Created: 03/07/05 10:31   Filed Date: 03/05/05 23:59
Assigned Date: 03/07/05 10:31
Routing: None

## NAMES

Inv: ARRESTED # 17    Adult/Juvenile: A   Type: PERSON
Name: RENDON, LAWRENCE
Race: H    Sex: M    DOB: 04/30/1975   Age: 29    Height: 506  Weight: 170  Hair: BRO   Eyes: BRO
Language: ENGLISH

Scars, Marks and Tattoos:   Location          Feature          Description
    CHEST             TAT              L/SIDE CHEST

Identification: DL - B4407967 - CA

## MO

ACE OF ATTACK
    OTHER
RROUNDING AREA
    RESIDENTIAL
UCT-RESIDENCE
    HOUSE

# DRAFT

FRESNO POLICE DEPARTMENT

vent: 05AI3386            CA0100500            Supplement - Case: 05-021148

## OTHER FACTORS

ATTACK METHOD
   STRONG ARM, THREATEN
PERSON CRIMES
   ASSAULT ON PEACE OFFICER

## NARRATIVE

## FOLLOW UP INVESTIGATION:

### SOURCE:
On Sunday 03/06/2005 at 0710 hours while assigned to uniformed patrol in southeast Fresno I responded to 445 S Cedar (UMC) to releive Officer S. Craig #1094 who was (S) Lawrence Rendon who was in custody waiting for medical treatment.

### INVESTIGATION:
Upon my arrival I changed cuffs out on Rendon and releived Officer Craig. I stood by with Rendon while he waited for medical treatment. While waiting with Rendon he asked me what his charges were so I looked at his booking sheet and told him, PC 69, PC 148(a) and PC 415(1). Rendon asked me what those sections meant and I told him that PC 69 is a Felony and is Resisting Executive Officer by means of threat or force. Rendon denied he did that and said, "Man, I was just sitting inside when one of your partners came in and started hitting people with his baton". I told Rendon that I could not comment on it, because I wasn't there. I told Rendon, "You asked me what the charges are so I told you". Rendon then started to explain what happened at his parents house last night. Rendon talked about how he and his family were celebrating his brother's return from Iraq. Rendon said they started "partying" at 6:30pm and had went through 6 bottles of Pedron (Tequila) and were also drinking from a keg they had. Rendon asked me, "How can an officer just come into a house and start hitting people". I told Rendon I was not present and could not offer my opinion since I was not persent during the incident. Rendon then said, "That's cool, I'm just going to get my lawyer". I told Rendon he was intitled to a lawyer and that the report of what happened would explain everything better than I could. Rendon then started to complain about how his shoes were dirty. This is when I noticed Rendon's jeans were also dirty. I asked Rendon how his shoes got and pants got dirty if he was inside when he was arrested. Rendon explained how he was drug out of the house by officers and put on the ground. Rendon explained how he initially was outside because his brother who is on probation was causing the argument. Rendon said that he had went inside before officers arrived and didn't know what happened outside.

After about an hour an a half Rendon stated, "Oh yea, now that this alcohol is wearing off I can feel it". Rendon said he had "enough" to drink, but said he didn't drink any of the Tequila.

Rendon was treated medically and then transported to Fresno County Jail and booked.

### CONCLUSIONS/DEDUCTIONS:


### DISPOSITION:


Officer: MALDONADO (V3198), MANUEL #P578                         Page 2 of 3
Supervisor:

DRAFT

FRESNO POLICE DEPARTMENT

CA0100500

:: 05AI3386

Officer: MALDONADO (V3198), MANUEL #P578

Supervisor:

# EXHIBIT "B"

# PRELIMINARY TRANSCRIPT
# HELD ON MAY 27TH, 2005

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF FRESNO

3                   CENTRAL DIVISION

4         Before the Honorable Carlos A. Cabrera, Judge

5                   Department 30

6                      -oOo-

7   THE PEOPLE OF THE STATE    )
    OF CALIFORNIA,             )        No. F05902009-0
8                              )
                               )
              Plaintiff,       )
9                              )
           vs.                 )        PC69
10                             )        PC245(c)
    RALPH CHRISTOPHER RENDON,  )        PC148(d)
11                             )        PC243(b)
              Defendant.       )        PC69
12  _____
                      ---oOo---
13
    Fresno, California                   MAY 27, 2005
14

15                    ---oOo---

16             PRELIMINARY EXAMINATION

17             REPORTER'S TRANSCRIPT

18                    ---oOo---

19

20

21
                                    ⌐┐ COPY
22

23

24

25  HELD TO ANSWER:              Reported by:
    MAY 27, 2005                 MYRA A. PISH,
26                               C.S.R. No. 11613

```
 1              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   IN AND FOR THE COUNTY OF FRESNO

 3                          CENTRAL DIVISION

 4            Before the Honorable Carlos A. Cabrera, Judge

 5                           Department 30

 6                            ---o0o---

 7   THE PEOPLE OF THE STATE       )
     OF CALIFORNIA,                )     No. F05902009-0
 8                                 )
                   Plaintiff,      )
 9                                 )
                vs.                )
10                                 )
     RALPH CHRISTOPHER RENDON,     )
11                                 )
                   Defendant.      )
12  _____
                                       -o0o-
13   Fresno, California                       MAY 27, 2005
                                       -o0o-
14
```

15      The above-entitled matter came on regularly for

16  preliminary examination in Department 30 of the Superior Court

17  of the State of California, in and for the County of Fresno,

18  Central Division, before the Honorable Carlos A. Cabrera,

19  Judge, the 27th of May.

20      The People of the State of California were represented by

21  Douglas Treisman, Deputy District Attorney.

22      The defendant was personally present in court and

23  represented by David Cramer, Alternate Defense Office.

24      The following proceedings were had and testimony taken,

25  to wit:

26                            ---o0o---

I N D E X

SESSIONS

MAY 27, 2005 .

        AFTERNOON SESSION                          1
            PEOPLE REST                           20
            HELD TO ANSWER                        23


                 WITNESSES IN CHRONOLOGICAL ORDER

PEOPLE'S WITNESSES:

        MICHAEL MANFREDI
            DIRECT EXAMINATION BY MR. TREISMAN     3
            CROSS-EXAMINATION BY MR. CRAMER       15

1              FRIDAY, MAY 27, 2005 - - AFTERNOON SESSION

2         THE COURT:  Ralph Christopher Rendon.

3         MR. TREISMAN:  Douglas Treisman for the People.

4         THE COURT:  Case F05902009-0.

5         MR. TREISMAN:  Good afternoon, your Honor.  Douglas

6    Treisman for the People.

7         MR. CRAMER:  Your Honor, may we approach real fast?

8         THE COURT:  People are represented by Doug Treisman, the

9    defendant is present in custody.

10        MR. CRAMER:  David Cramer, ADO, for Mr. Rendon, who is

11   present in court in custody.

12        For the record, Mr. Rendon would like a two-week

13   continuance for the preliminary hearing.

14        THE COURT:  The reason for that?

15        MR. CRAMER:  He would like to hire an attorney to have a

16   Writ of Habeas Corpus heard.

17        THE COURT:  Okay.  Well, this is the time set for the

18   preliminary hearing.  We have had this case set since May 17.

19   Proceedings began on this case, at least it was in this court

20   for dispo reset on April 19th.  So given the fact that all the

21   witnesses are here, the court will deny the request for a

22   continuance, and noting for the record that defendant's

23   interests are not affected by denial of the request for a

24   continuance, because he can always file the writ subsequent to

25   if, in fact, he is held to answer, and that's something I

26   cannot determine until after I hear the evidence.

1  Okay.  Other than that, are the parties ready to proceed?

2  MR. CRAMER:  Yes, your Honor.

3  MR. TREISMAN:  Yes.

4  THE COURT:  Any preliminary motions?

5  MR. TREISMAN:  Yes, we would like to designate Marcus

6  Tafoya as our chief investigating officer.  We have called to

7  the stand our first witness.

8  I would also note that in addition to the preliminary

9  hearing, we had requested be placed on calendar the violation

10  of probation, which is 799-5,.  And my belief, and we ask that

11  that be placed on calendar, 975-1, both I believe to be in

12  violation of probation that will be trailing.

13  THE COURT:  I only have, other than this case,

14  03F903799-5.

15  MR. TREISMAN:  Well, I don't have an objection to hearing

16  that, and we would ask that the violation hearing be heard

17  along with the preliminary hearing.  I don't know the status

18  of the other case, if it is possible he completed probation,

19  but my calculations show that it would be active and it would

20  also constitute a violation of probation, but we can proceed

21  on the one, if the court only has that one on calendar.

22  THE COURT:  Raise your right hand, please.

23  MICHAEL MANFREDI

24  called as a witness by and on behalf

25  of the People, being first duly sworn, was

26  examined and testified as follows:

1          THE COURT:  State your full name, spell your last name.

2          THE WITNESS:  Michael Manfredi, M-A-N-F-R-E-D-I.

3          THE COURT:  Thank you.  Proceed.

4          MR. TREISMAN:  Thank you, your Honor.

5                       DIRECT EXAMINATION

6     BY MR. TREISMAN:

7          Q     Officer Manfredi, can you please tell me how you are

8     employed?

9          A     I'm a police sergeant for the City of

10    Fresno.

11         Q     How long have you been in that employ?

12         A     For about 19 years.

13         Q     And you mentioned that you are currently a sergeant?

14         A     Yes.

15         Q     Are you involved in patrol duties at all as a

16    sergeant?

17         A     Yes.

18         Q     Are you familiar with Officer Tafoya to my left?

19         A     Yes.

20         Q     Did you have occasion to be working with him in

21    March of 2005?

22         A     Yes.

23         Q     Can you tell me, please, if you recall, on March 6th

24    of 2005, if you were on duty?

25         A     Yes.

26         Q     Do you recall receiving a dispatch call to a

 1  residence on, I believe it is East Mono?

 2          A    Yes.

 3          Q    Can you tell me please, what was the nature of that

 4  call?

 5          A    The call came in as 50 people fighting at a

 6  residence.

 7          Q    Are you familiar with the area of town?

 8          A    Yes.

 9          Q    And are you familiar with the specific residence?

10          A    Yes.   It is the subject of quite a few

11  police calls.

12          Q    With regard to that location, is it within the City

13  of Fresno?

14          A    Yes.

15          Q    And within Fresno County?

16          A    Yes.

17          Q    Did you respond to that location?

18          A    Yes.

19          Q    At approximately what time did you arrive?

20          A    It was right after midnight, I believe,

21  right around midnight.

22          Q    With regard to the call, the dispatch call, were you

23  made aware of whether or not it was a party at the residence

24  that was calling or whether it was another residence?

25          A    I think there were multiple phone calls.   I

26  think someone had gone, one of the calls I believe,

4.

1    had come from McDonald's pay phone.  McDonald's is at

2    Barton and Kings Canyon, about half a block away from

3    the house.

4         Q    I see.  And in any event, it was some type of a call

5    about a fight involving approximately 50 people?

6         A    Yes.

7         Q    Upon your arrival, what if anything did you observe?

8         A    Well, when the call came out Officer Tafoya

9    and myself were riding in the same car.  The call was

10   broadcast, we were at Kings Canyon at Jackson.  Mono

11   is just one street north of Kings Canyon.  We turned

12   north on Jackson, we got to the intersection of Mono.

13   We tried to determine the address, which way it was

14   from the intersection, and we could hear it from down

15   the street, it was about a half a block away.

16        Q    When you say you could hear it, could you hear music

17   or --

18        A    People yelling, screaming, we could hear a

19   large disturbance.

20        Q    I see.

21        A    Coming from the west of us.  We drove down

22   the street and we could see some people moving away

23   from the residence quickly, some were people running

24   towards the residence.  The house is up on the north

25   side of the street, and as we pull up we could see a

26   large fight going on up on the front porch in the

1    front yard of the residence.

2         Q    And so that it's covered, are you in a marked patrol

3    vehicle?

4         A    Yes.

5         Q    Were you in full uniform?

6         A    Yes.

7         Q    I am familiar with your assignments in the past,

8    Officer Tafoya is in what I would call combat gear, were you

9    wearing that type of gear at the time?

10        A    Yes, I was wearing this same uniform and

11   Tafoya was wearing that uniform.

12        Q    All right.  And given the observations, were you

13   able to make any immediate determination as to what type of

14   event were you dealing with?

15        A    Well, looking at the disturbance, it was

16   mixed as Hispanic males, females, ages from 20's.  I

17   think the oldest guy looked like he was late 30's,

18   early 50's.

19        What it looked like was, what I was kind of

20   thinking was, there were some, more towards the house

21   older males and some females and some other people,

22   looked like they were trying to pull some people in

23   the house, and people were punching.  It kind of

24   looked like a party that had gone wrong.  A lot of

25   times what we have in that area are gang members and

26   stuff crashing parties, and fights break out between

2    was looking at the residents at the house were having

3    a problem with some of the folks there in the front.

4         Q    Possible party crashers of one type or another?

5         A    Yes.

6         Q    And what, if anything, did you and/or Officer Tafoya

7    do upon your having made these observations?

8         A    Well, the first thing I did, because of the

9    number of people fighting, I immediately called for

10   Code 3 emergency assistance, for other officers to

11   respond, lights and sirens.  We had concerns, because

12   I saw an older male and I saw there were several

13   females mixed in the fight, I was worried about their

14   safety.  And the first thing we did, we went up and

15   we started pulling the combatants apart.

16        Q    I see.  People who were actually fighting, you are

17   separating?

18        A    Yes.

19        Q    What, if anything, occurred?

20        A    Well, I was up on the elevated porch.  Most

21   of the time it is, turned out later, I guess, that

22   the father had been hosing the people down trying to

23   separate them.  It was all wet and muddy.  I'm

24   standing at the edge of the porch trying to separate

25   people, initially pulled two guys apart, and one of

26   those subjects turned and started hitting me in the

2    Q    You mentioned two subjects and one turned on you,

3    were you familiar at all with this individual at that time?

4         A    Those ones, no.

5         Q    All right. The individual that turned on you and

6    began to fight with you, are you, we are present on one

7    defendant of multiple defendants in the case, are you familiar

8    with any relationship or connection between that defendant and

9    the defendant in this case?

10        A    I don't remember, he's either a brother or

11   cousin to him.

12        Q    I see. And with regard to that individual that

13   turned on you, were you familiar with who that was or did you

14   become familiar with who that was?

15        A    Yes.

16        Q    Who was that?

17        A    Lawrence Rendon.

18        Q    Lawrence Rendon. Can you tell me, please, after

19   that occurred, what if anything occurred next?

20        A    Well, he was to my back and side, and was

21   basically sucker-punching my neck and shoulders.  And

22   at that time I had hold of two other guys I was

23   trying to separate.  At that time, I was looking

24   forward when I saw Ralph Rendon, he was back behind

25   the two guys I was trying to separate.  He looked me

26   in the face, he looked up over, saw the name tag, saw

1   the medals, then he reached over, sucker-punched me

2   in the, up over the forehead and temple, and a second

3   hit to the cheek.

4        Q    All right.  And you are pointing to the area on the

5   right side of your face?

6        A    Yes.

7        Q    In the area of your brow and down to the upper area

8   of your cheek?

9        A    Cheek, yes.

10       Q    You mentioned the individual, Ralph Rendon.  Is that

11   individual present in court at this time?

12       A    Red jumpsuit, seated next to counsel.

13       MR. TREISMAN:  May the record reflect identification of

14   the defendant?

15       THE COURT:  Yes.

16       MR. TREISMAN:  Q    After he looked you in the eye and was

17   able to observe you and punch you, what if anything happened

18   next?

19       THE WITNESS:  I grabbed ahold of him.  I grabbed over two

20   people to grab ahold of him to arrest him.  And at that time,

21   Lawrence and another subject, they pushed forward and the

22   three of us went off the, I was standing, my heels were at the

23   edge of the porch, went off with Ralph landing on top of me,

24   and the other subjects landed on top of me.

25       Q    So essentially three of them have now pushed you

26   backward off of the porch, and they have landed on top of you?

1    A    Yes.

2         Q    Where, if at all during this event, was Officer

3    Tafoya?

4         A    At that time, I had lost sight of him.  I

5    knew that he was off to my right somewhere, but I

6    couldn't see him at this point.

7         Q    I see.  You did not observe then, what if anything

8    was occurring to him while this was occurring to you?

9         A    No.

10        Q    With regard to, I believe you have mentioned

11   Lawrence Rendon, did you become aware of who the two subjects

12   were that you were separating just prior to being punched by

13   Ralph Rendon?

14        A    No, they had their sides and backs to me, I

15   was trying to pull them apart.

16        Q    Lawrence Rendon, during the time that you had

17   approached to separate the other two, what if anything had

18   occurred to him prior to, I'm sorry, this is convoluted,  let

19   me try again.  Lawrence Rendon had turned and had

20   sucker-punched you in the back?

21        A    Yeah.

22        Q    You had proceeded up the porch area?

23        A    I was up on top of the porch when he did

24   that.

25        Q    What if anything happened to Mr. Lawrence Rendon

26   while this was occurring?

2    couldn't see them.  I didn't see him again until,

3    until I was inside the house.

4         Q    I see.  So it was, he punched and then moved on in

5    some way?

6         A    Hold on, him and Ralph and the other one,

7    they pushed at one time and we went off the porch

8    with him on top of me.  I couldn't really see what

9    was going on.  Like I said, he was laying directly on

10   top of me.

11        Q    Now, if I understand correctly, you are laying on

12   your back, Lawrence is nearby, and pardon me, Ralph Rendon is

13   essentially on top of you?

14        A    Yes.

15        Q    What if anything happens at this point?

16        A    Aside from I'm getting kicked and stuff by,

17   now we're in the middle of a crowd, I could feel my

18   gun starting to lift out of the holster.  I'm yelling

19   to Tafoya, "they are trying to get my gun, they are

20   trying to get my gun."

21        Q    Were you able to determine who, if anyone, was

22   trying to lift your gun, trying to get at your gun?

23        A    Yeah, I grabbed ahold of the hand and arm

24   and maintained ahold of him.

25        Q    And you have pointed in the direction of counsel

26   table, who was that individual that were you holding onto?

1          A     Ralph.

2          Q     Thank you.  Again, the defendant?

3          A     Yes.

4          Q     At that point in time you mentioned you grabbed his

5    arm, was he able to actually fully remove your weapon?

6          A     No, I was able to maintain control of it.

7          Q     What if anything happened?

8          A     At that time I could tell Tafoya, he was

9    coming from the right and he was pushing subjects off

10   of me, he got the other two off, and at that time I

11   was able to roll over and roll Ralph over and get on

12   top of him.

13         Q     What if anything happened at that point?

14         A     At that time, when we had rolled, I was

15   facing back towards the street and with my back to

16   the house.  I could hear officers arriving, I could

17   hear the sirens and stuff.  I could hear the cars

18   approaching, and I could tell that the crowd was

19   starting now to surge back, up the steps, back in

20   towards the house.

21         Q     I see.  They are backing away from what is occurring

22   outside?

23         A     Yes.

24         Q     Was Mr. Ralph Rendon placed into custody at this

25   point?

26         A     Yes.

1   Q   And --

2   A   Well, there's a brief struggle, and then

3   when another officer got there, we were able to

4   handcuff him.

5   Q   And by struggle, can you describe for me what

6   occurred?

7   A   When we rolled over, I got on top of him,

8   he went face down, he had his arms under him.  I was

9   telling him to bring his arms out, he wouldn't do

10   that.

11   I could tell, I could see my radio was bent, it

12   was gone, and it was underneath him.  I could see the

13   cord still wrapped on his arm.  And knowing I didn't

14   have a radio at that time to access additional help,

15   I couldn't tell if I had lost anything else, like a

16   baton or pepper spray off the belt.  I was telling

17   him to bring his arms back, he was locking up, I was

18   able to grab his left arm and bring it back up behind

19   him.  He kept his right arm under him.  I was telling

20   him, bring your arm back, I didn't know if he was

21   armed with something or if he had gotten anything

22   else off of me.

23   I had my gun in my hand because now I had

24   several other family members who kept running at us,

25   yelling, looked like they were trying to get him

26   loose.  And struck him one time on the backside of

```
 1        the head with the flat side of my pistol.  Told him

 2        to bring his hand back behind his back.  It took him

 3        a couple of more times of me telling him, get your

 4        hand back.  He eventually did.  I held his hands back

 5        behind him until the next officer arrived and we

 6        handcuffed him.

 7             Q    I see.  At the time that you placed him in custody,

 8        were you able to determine whether he was in a sober condition

 9        or under the influence in any way?

10             A    He appeared as though he had been drinking.

11             Q    Did anything further, understanding that there were

12        further events at this location, did anything further occur

13        after he now was placed under arrest, occur with Mr. Ralph

14        Rendon?

15             A    No.  At that time I left him in the front

16        yard, I had Officer Chung take charge of him, and

17        then we went in to assist Officer Tafoya with the

18        other subjects who had retreated back inside the

19        residence.

20             Q    I see.  With regard to the punch to your face, did

21        you receive of any visual injury?

22             A    No.  Slight redness, but nothing.  He

23        doesn't hit that hard.

24             Q    And with regard to, I know you have mentioned you

25        made eye contact, was there anything said at the time that you

26        were punched by Mr. Rendon?
```

14

```
 1          A      No, it was just, it was kind of weird.

 2     Like I said, he looked at me, then it was like he

 3     kind of peeped up over the guys who was there to look

 4     down and see, he looked at this, the medals and the

 5     name tag, and then that's what he did.  It was kind

 6     of like --

 7          Q      It seemed odd?

 8          A      Yes.

 9          Q      Okay.  Thank you.  Nothing further at this time.

10          THE COURT:  Cross-examination?

11                         CROSS-EXAMINATION

12     BY MR. CRAMER:

13          Q      Good afternoon, officer.

14          A      Good afternoon.

15          Q      You testified that you arrived at the scene at

16     approximately midnight?

17          A      It was right around midnight, yes.

18          Q      Was the area in front of the house, can you give an

19     estimate of how big the front yard is?

20          A      The front yard is maybe 20 feet deep or so.

21          Q      So 20 feet from --

22          A      Like the sidewalk to the --

23          Q      From the sidewalk to the front porch?

24          A      Yes.

25          Q      And were there any lights in the front yard?

26          A      You could see real well out there.  Street
```

1    lights and lights from the house and stuff.

2        Q    Okay.  Was there a porch light?

3        A    Light has, the porch has a light, yeah.

4        Q    Was it on?

5        A    I don't know.  It was visible out there,

6    you could clearly see everybody and stuff out there.

7        Q    Do you know how, can you give an estimate of how

8    large the front porch is?

9        A    It is probably 20, 25 feet across, maybe,

10   raised, elevated, cement porch.

11       Q    How many steps up?

12       A    Several.

13       Q    Now, you testified that you walked up on the porch

14   and two other people approached you from the side?

15       A    No.  We went up and were breaking up a

16   large fight, there was about 20, 25 people fighting

17   on the porch.

18       Q    On the porch, okay.

19       A    Yeah.

20       Q    And you said Lawrence Rendon and someone else was

21   next to you on each side of you or in front of you?

22       A    Lawrence and another guy were struggling to

23   my left.  I originally pulled them apart, and as

24   Lawrence was pulled apart from the other one, and I

25   was trying to break up the two other ones, and he

26   started hitting from the side and the back.

1           Q     And where was the other person that Lawrence was

2    fighting with that you broke up?

3           A     I don't know.

4           Q     You were just struggling with Lawrence Rendon?

5           A     No.  There was a big fight, we were trying

6    to get the people separated.  Our concern was the

7    females and the older guy who were closer to the

8    front door.  Pulled these guys apart, Lawrence and

9    whoever else the other one was, I'm not sure who it

10   was, and I was pulling two other guys apart, and

11   that's when Lawrence started sucker-punching me from

12   the side.  He reached up over the two guys I was

13   attempting to separate and sucker-punched me.

14          MR. TREISMAN:  For the record, Mr. Ralph Rendon.

15          THE WITNESS:  Yes, Mr. Ralph Rendon.

16          MR. CRAMER:  Q   Okay.  Were the person who

17   sucker-punched you, was he in front of you and to the side or

18   behind you?

19          A ·   You mean Ralph?

20          Q     Not Ralph, Lawrence.

21          A     He was offset to my left.

22          Q     So he was to your left, but was he little bit behind

23   you?

24          A     Little bit behind.

25          Q     Was there anybody or any object in between you and

26   the defendant?

1        A    Ralph?

2        Q    Yes.

3        A    Yeah, there were two other people.  He

4   reached up over them, I was separating two, he was

5   back behind them and --

6        Q    Okay.  Do you know how tall the defendant is?

7        A    5'8", 5'9".

8        Q    And he was able to get a punch in between the person

9   in between him and you?

10       A    Family members aren't real tall.

11       Q    Okay.  Now, you testified that you fell off of the

12   porch?

13       A    No, when him and the other two rushed

14   forward, my heels were at the back of the porch and I

15   went right off with him on top.

16       Q    And in direct examination you testified that you

17   couldn't see when you fell, there were people on top of you,

18   correct?

19       A    Yeah.  When they fell, they were on top of

20   me.

21       Q    When you say they, who was they?

22       A    Ralph was directly on top of me, Lawrence

23   was to the left, and one of the other cousins was to

24   my right.

25       Q    When you are laying on the ground, your gun, the

26   holster holds the gun, correct?

```
 1        A    Uh-huh.

 2        Q    What side of the body is that on?

 3        A    Same side as when I'm standing up, it's on

 4   my right side.

 5        Q    On the right side?

 6        A    Yeah.

 7      · Q    And the defendant was on top of you, correct?

 8        A    Yes, directly on top of me.

 9        Q    How did you know that Ralph Rendon was the person

10   who tried grabbing your gun?

11        A    Because I grabbed ahold of that arm and

12   that hand, and when we rolled over, I was still on

13   top of him, still had ahold of him.

14        Q    Okay.  Is striking a defendant with the smooth side

15   of your pistol a common tactic to put someone in handcuffs?

16        MR. TREISMAN:  May I have the question re-read, please?

17        MR. CRAMER:  Q   Is using, I believe you said the smooth

18   side of your pistol or handle of your pistol to strike

19   Mr. Rendon, is that a usual way of getting suspect in

20   handcuffs?

21        THE WITNESS:  Well, what techniques we use depend on the

22   circumstances.  And considering that's what I had available to

23   me at the time, and considering circumstances of the fight

24   involved, yes.

25        Q    You said you grabbed the defendant's hand when you

26   felt your gun being grabbed.  Did you let go of the hand at
```

1  | any point?

2  | A    When we rolled over and I flipped him to

3  | his stomach, yes.

4  | Q    Now, you have testified earlier that the, strike

5  | that.  No more questions for this witness.

6  | THE COURT:  Redirect?

7  | MR. TREISMAN:  I have no questions.

8  | THE COURT:  Thank you, Sergeant Manfredi, you may step

9  | down.  Next witness.

10  | MR. TREISMAN:  The People would rest at this time.

11  | THE COURT:  Defense evidence?

12  | MR. CRAMER:  Motion to dismiss for lack of sufficient

13  | evidence, your Honor.

14  | THE COURT:  You have no evidence at this time?

15  | MR. CRAMER:  No, no affirmative defense at this time.

16  | THE COURT:  A motion by the People?

17  | MR. TREISMAN:  Yes, we would ask that the defendant,

18  | well, if I could have just a moment, please.

19  | THE COURT:  I don't see, I haven't heard evidence of all

20  | of the counts against the defendant in the complaint.  I have

21  | heard of a 148(a), trying to grab the gun; I have seen

22  | evidence of 243(b), battery on a police officer; and maybe

23  | 148, all around.  I don't see, I don't recall testimony

24  | regarding PC 69.

25  | MR. TREISMAN:  After the officer was struck, your Honor,

26  | the defendant rushed him.  After he grabbed the weapon, well,

1   perhaps the appropriate thing would be to, I'll make my motion

2   and then I will argue for the motion, but I believe the

3   evidence will be present for PC 69.

4          MR. CRAMER:  I disagree, your Honor.

5          THE COURT:  He wants --

6          MR. CRAMER:  I'm sorry, I apologize.

7          THE COURT:  So the motion is to hold the defendant to

8   answer.  You wanted to look at something first?

9          MR. TREISMAN:  No, I was going to discuss with the

10  defense counsel.

11         So at this point in time the defendant, we would ask that

12  the defendant be held to answer to the charges currently

13  stated in the complaint against him, which are PC 69, which,

14  understanding the court's concern, I'll address as I go

15  through them.  Which is essentially a 148 with the use of

16  force, and the punch to Officer Manfrefi is in fact the use of

17  force.  The thrusting of himself upon Officer Manfredi and

18  pushing him from the porch to his back is also a use of force,

19  and was obstructing and delaying officers in the execution of

20  their duties.

21         The further motion as to this defendant is that he be

22  held to answer to the 245(c), which is again the punch to the

23  face.  The additional 243, 148(d), the court heard in regards

24  to the removal of the weapon or attempted removal of the

25  weapon.  The 243(b) is also a misdemeanor, but it is the same

26  application of force, it is charged alternatively.

1    The PC 69, although the force was applied only to Officer

2    Manfredi, Officer Tafoya was in his company, and Officer

3    Tafoya becomes a victim of that PC 69 as well under a theory

4    of the officers acting together to enforce peace at this party

5    or malaise.

6         THE COURT:  Well, I only have to make a holding order as

7    to the felonies, I don't have to address the misdemeanors.

8         MR. TREISMAN:  That's correct.  I went through them to

9    the extent the court had mentioned concern about any of the

10   charges, I wanted to explain our theory to the extent that I'm

11   able.

12        THE COURT:  So, all right.  So I'm concerned about Counts

13   1, Count 2, Count 3, and Count 10, which seems to be

14   repetition of Count 1.

15        MR. TREISMAN:  I believe that Count 10 is with a separate

16   victim, one being Officer Tafoya, and one being Mike Manfredi,

17   but I could be mistaken, let me double check.  Count 1 is Mike

18   Manfredi and Count 10, as best as I am able to determine,

19   should be Officer Tafoya.  If it doesn't read that way, but

20   the intention is a PC 69 as to each and I would correct that

21   if it is necessary.

22        MR. CRAMER:  May I be heard on that?

23        THE COURT:  Yes.

24        MR. CRAMER:  Officer Manfredi testified that when he was

25   attacked, he fell over off of the porch, and after my client

26   allegedly grabbed his gun grabbed his arm, turned over and

1    after striking him with the smooth side of his pistol, put his

2    handcuffs on. I didn't hear any testimony about anybody, my

3    client resisting anything by Officer Tafoya, and I would even

4    be, strike that. Submitted.

5         MR. TREISMAN: With regard to that, the testimony was

6    that even after struck with the weapon, he had to, in my

7    memory is three times, order him to stop. And he finally did

8    and complied, but that was the testimony, is that there was a

9    continuation of the struggle by the defendant and repeated

10   commands, which the defendant ultimately complied with, but

11   not immediately by any stretch.

12        MR. CRAMER: Then again, Manfredi, once he handcuffed

13   him, where's the resistance towards Officer Tafoya, in anyway?

14        THE COURT: Okay. Submitted?

15        MR. CRAMER: Yes, your Honor.

16        MR. TREISMAN: By the People.

17        THE COURT: All right. It appearing to the court the

18   offense stated in Count 1 of the complaint, to wit, the

19   violation of Section 69 of the Penal Code, a felony; Count 2,

20   violation of Section 245(c) of the Penal Code, a felony; Count

21   3, violation of Penal Code 148(d), a felony; have been

22   committed, and there have been reasonable and probable cause

23   to believe that the defendant, Ralph Christopher Rendon,

24   committed such offenses, he is held to answer to those charges

25   in Fresno Superior Court, where he is to appear for

26   arraignment on June 10th of the year '05, at 8:30 a.m., in

1

2         The only other charged felony against this defendant is

3    Count 10, and court sees that as a repetitious of Count 1,   so

4    will not hold him to answer on that.  The others are

5    misdemeanors.

6         Then in case F 03903799-5, defendant is currently on

7    felony probation.  He had been placed on felony probation by

8    Judge Wayne Ellison on July 30th, 2004.  One of the conditions

9    is to obey all laws.  The court hereby finds the defendant is

10   in violation of his probation, revokes probation and refers

11   the matter, well, for now we'll just trail it along to

12   Department 95 for further VOP proceedings, in case F

13   05902009-0, Department 95 on June 10th.

14        (Whereupon, the proceedings were completed.)

15                          ---o0o---

16

17

18

19

20

21

22

23

24

25

26

```
1    STATE OF CALIFORNIA    )
                            )   ss.
2    COUNTY OF FRESNO       )
```

3        I, MYRA A. PISH, Certified Shorthand Reporter, do hereby

4    certify that the foregoing pages, numbered 1 to 25, inclusive,

5    comprise a full, true and correct transcript of my shorthand .

6    notes. and a full, true and correct statement of the

7    proceedings held at the time and place heretofore stated.

8

9              DATED:   June 5, 2005

10                      FRESNO, CALIFORNIA

11

12

13

14

15

16                      MYRA A. PISH, RPR, CSR
                        Certificate No. 11613
17

18

19

20

21

22

23

24

25

26