1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANTHONY RENDON,<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF FRESNO, et al.,<br><br>              Defendants. | 1:05-CV-00661 OWW DLB<br>1:05-CV-01017 OWW DLB<br>1:06-CV-00233 OWW DLB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO CONSOLIDATE** |
| GABRIEL RODRIGUEZ AND REBECCA RODRIGUEZ,<br><br>              Plaintiffs,<br><br>     v.<br><br>CITY OF FRESNO, et al.,<br><br>              Defendants. | |
| LUPE E. MARTINEZ AND RALPH C. RENDON,<br><br>              Plaintiffs,<br><br>     v.<br><br>CITY OF FRESNO, et al.,<br><br>              Defendants. | |

1.   <u>INTRODUCTION</u>

Defendants move to consolidate *Rendon v. Fresno,* 1:05-CV-00661 OWW DLB ("*Rendon* complaint"), *Rodriguez v. Fresno,* 1:05-CV-

1

1   01017 OWW DLB ("*Rodriguez* complaint"), and *Martinez v. Fresno*,

2   1:06-CV-00233 OWW DLB ("*Martinez* complaint").   Plaintiffs Gabriel

3   Rodriguez and Rebecca Rodriguez ("*Rodriguez* Plaintiffs") oppose

4   the motion.

5       All three lawsuits allege that officers of the Fresno Police

6   Department ("FPD") acted unlawfully when they responded to a

7   disturbance at a party that took place on March 5, 2005 at 4519

8   East Mono Avenue in Fresno, California.   David Rendon resides at

9   that location.   His complaint alleges that police unlawfully

10  entered his home, used excessive force against him, and conspired

11  to violate his civil rights.   Gabriel and Rebecca Rodriguez

12  ("Rodriguez") were guests at the party.   Their complaint alleges

13  that they were both severely beaten by an officer before both

14  were falsely arrested.   Lupe E. Martinez ("Martinez") and Ralph

15  C. Rendon were also guests at the party.   Their complaint also

16  alleges that police used excessive force in arresting them and

17  that the police conspired to violate their civil rights.

18

19                  **2.   PROCEDURAL HISTORY**

20      Plaintiff David Rendon filed his compliant on May 20, 2005.

21  (05-CV-00661, Doc. 1., Complaint.)   He then filed a first amended

22  complaint on August 29, 2005.   (05-CV-00661, Doc. 29., First

23  Amended Complaint ("*Rendon* FAC").)   Defendants filed an answer to

24  the *Rendon* FAC on December 1, 2005.   (05-CV-00661, Doc. 40.,

25  Defendants' Answer to Amended Complaint.)   A jury trial for

26  *Rendon* is scheduled for September 26, 2006. (05-CV-00661, Doc.

27  45, Scheduling Order.)

28      The *Rodriguez* complaint was filed on August 5, 2005.   (05-

                                  **2**

1  CV-01017, Doc. 1., Complaint ("*Rodriguez* complaint").)

2  Defendants filed an answer to the *Rodriguez* complaint on August

3  30, 2005. (05-CV-01017, Doc. 8., Answer.)  On September 22,

4  2005, Defendants filed a motion to consolidate *Rendon v. Fresno*,

5  05-CV-0661 and *Rodriguez v. Fresno*, 05-CV-01017. (05-CV-00661,

6  Doc. 32., Motion to Consolidate Cases; 05-CV-01017, Doc. 11.,

7  Motion to Consolidate Cases.)  On October 21, 2005 the Rodriguez

8  Plaintiff's opposed the motion.  (05-CV-01017, Doc. 12.,

9  Memorandum/Response in Opposition re Motion to Consolidate

10 Cases.)  Defendants filed their reply to the *Rodriguez* opposition

11 on October 31, 2005.  (05-CV-01017, Doc. 15., Reply to Response

12 to Motion to Consolidate.)  On December 1, 2005 the cases were

13 consolidated for discovery purposes only.  The discovery cut off

14 date is June 2, 2006[1].  (05-CV-01017, Doc. 23., Order.)

15 Consolidation for trial purposes was denied subject to

16 reconsideration at the final pretrial conference.  (05-CV-01017,

17 Doc. 18., Order Regarding Consolidation.)  A jury trial for

18 *Rodriguez* is scheduled for September 26, 2006. (05-CV-01017, Doc.

19 23, Order.)

20      The *Martinez* complaint was filed on March 1, 2006.  (06-CV-

21 00233, Doc. 1., Complaint ("*Martinez* complaint").)  Defendants

22 filed an answer to the *Martinez* complaint on March 21, 2006.

23 (06-CV-00233, Doc. 13., Answer.)  Defendants then filed a motion

24 to consolidate *Rendon v. Fresno*, 05-CV-0661, *Rodriguez v. Fresno*,

25 05-CV-01017 and *Martinez v. Fresno,* 06-CV-00233 on April 7, 2006.

26  _____

27      [1]The discovery cutoff date for *Rendon* was originally May 15,
   2006.  Upon consolidating with *Rodriguez* for discovery purposes,
28 the *Rendon* discovery cutoff was extended to June 2, 2006.

1   (05-CV-00661, Doc. 47., Motion to Consolidate Cases; 05-CV-01017,

2   Doc. 28., Motion to Consolidate Cases; 06-CV-00233, Doc. 15.,

3   Motion to Consolidate Cases.)  On May 1, 2006, the Rodriguez

4   Plaintiffs again opposed Defendants' motion to consolidate.  (05-

5   CV-01017, Doc. 39., Memorandum/Response in Opposition re Motion

6   to Consolidate Cases.)  On May 9, 2005 Defendants filed their

7   reply to the Rodriguez Plaintiffs' opposition.  (05-CV-01017,

8   Doc. 44., Reply to Response to Motion to Consolidate Cases.)  The

9   initial scheduling conference is set for July 12, 2006.  (06-CV-

10  00233, Doc. 3.)  There has been no scheduling conference in the

11  *Martinez* case, no trial date is set.  Further, at the hearing for

12  this matter Ms. Martinez stated that she will obtain an attorney.

13

14          **3.   SUMMARY OF THE COMPLAINTS**

15      **A.   *Rendon v. Fresno*, 1:05-CV-00661 OWW DLB.**

16      Pro se Plaintiff David Rendon alleges in his complaint that

17  on March 5, 2005, he hosted a welcome home party for his brother,

18  George Rendon, to celebrate George's safe return from a tour of

19  duty in Iraq.  (*Rendon* FAC, at ¶15.)  The party took place at

20  Plaintiff's home, located at 4519 East Mono Ave, in Fresno,

21  California.  (*Id.*)  David Rendon alleges that "[d]uring the

22  course of the party, two men exchanged words" and that "[t]o

23  avoid any kind of confrontation, Plaintiff [and others] separated

24  the two men."  (*Id.*)  According to David Rendon's complaint,

25  while he and others were restraining the two men, approximately

26  twelve to fifteen FPD officers arrived at the house and "started

27

28

**4**

hitting the named parties[2] with batons and using force that was

unreasonable...." (*Id.* at ¶17.)  David Rendon specifically

alleges that the force employed by Defendants to arrest him was

excessive. (*Id.* at ¶21.)

       The first cause of action in the *Rendon* complaint alleges

that FPD officers Manfredi and Tafoya, along with other FPD

officers, unlawfully entered Plaintiff David Rendon's home and

used excessive force in the course of arresting him. (*Rendon* FAC

at ¶¶12-24.)  The second cause of action alleges that the City of

Fresno ("City") negligently hired, trained, staffed, and

supervised the officers involved in the allegedly unlawful entry

and use of force. (*Id.* at ¶¶25-29.)  Plaintiff's third claim is

that Defendants Manfredi and Tafoya "conspir[ed] to violate [his]

constitutional rights by falsifying [a] Police Report." (*Id.* at

¶33.)  Finally, Plaintiff alleges that all Defendants are liable

under Article I, sections 7 and 13 of the California Constitution

as well as under California Civil Code sections 52 and 52.1, for

violating his civil rights in using excessive force and falsely

_____

       [2]    David Rendon alleges that numerous "named Parties" were
injured when Defendants Tofoya and Manfredi struck them with
batons and threw them onto the floor, and asserts that some of
these "named parties" were hospitalized as a result of their
injuries. (*Rendon* FAC at ¶18.)  According to the *Rendon*
complaint, the named parties are:  "George Rendon, Ricardo
Rendon, Lawrence Rendon, John Nunez, Jr., Nasaria Diane Rendon,
David J. Rendon, Priscilla Rendon, Vivian Centeno, Ralph C.
Rendon, Lupe E. Martinez, and Claudia L. Rendon...are injured
parties in this Civil Action." (*Rendon* FAC, at ¶2.)  However,
these individuals are not named as <u>plaintiffs</u> in his complaint.
As a general rule, a plaintiff cannot pursue claims based upon
injuries suffered by others.  Lupe E. Martinez and Ralph C.
Rendon have since filed their own suit.  06-CV-00233, Doc. 1.,
Complaint.

arresting him.  (*Id*. at ¶41-44.)

    **B.**   ***Rodriguez v. Fresno***, **1:05-CV-01017 OWW DLB.**

    Plaintiffs Gabriel and Rebecca Rodriguez arrived at the party a short time before police came on the scene.  According to their complaint, "within moments of [the Rodriguez's] arrival, City of Fresno police officer [Marcus Tafoya] ran unannounced through the front doorway waving his baton in the air and shouting at people...."  (*Rodriguez* Complaint, at ¶10.)  The complaint further alleges that Officer Tafoya approached the couple and began to strike Mr. Rodriguez, eventually causing his "head to burst open and start gushing blood."  (*Id*. at ¶11.)  Mr. Rodriguez fell to the ground and his wife tried to cover him to protect him from further injury.  (*Id*. at ¶12.)  Tafoya continued to strike Mr. Rodriguez and "proceeded to strike Rebecca numerous times in the legs, arms and back with his baton."  (*Id*. at ¶13.)  Mr. Rodriguez was handcuffed and placed under arrest.  He was transported first to the hospital and then to jail where he remained until later that night.  Mrs. Rodriguez was handcuffed and first taken to the police station.  She was later taken by ambulance to a hospital where she was handcuffed to a gurney. She was released later that morning after having been charged with battery, resisting arrest, and fighting in public.

    The Rodriguez's complaint names as Defendants Officer Tafoya in his individual capacity, along with the City.  The complaint alleges that the City is liable because Officer Tafoya's actions were undertaken pursuant to a policy, pattern, practice and custom of the City, because the City has not effectively trained its officers; has assigned as training officers individuals known

to engage in illegal practices; and has sanctioned the unlawful practices through deliberate or gross indifference.  The complaint specifically alleges that all named Defendants' conduct constitutes:

> (1)  Unreasonable use of force in violation of the Fourth Amendment. (*Rodriguez* complaint at ¶ 25.)
>
> (2)  Assault and battery.  (*Id*. at ¶¶27-28.)
>
> (3)  Negligence in the performance of their duties by, among other things, entering the house without just cause, using a baton to strike Mr. and Mrs. Rodriguez, failing to devote sufficient resources to training and supervision regarding the use of force and procedures for arresting and detaining individuals.  (*Id*. at ¶32.)

**C.    Martinez, et al. v. Fresno, 1:06-CV-00233 OWW DLB**

Pro se Plaintiffs Lupe E. Martinez and Ralph C. Rendon allege in their complaint that they were guests at the party on March 5, 2005.  (*Martinez* Complaint, ¶16.)  During the course of the party two men exchanged words.  (Id.)  Family members separated the two men to avoid physical confrontation.  (Id.)  As the two men were restrained, approximately twelve to fifteen police officers arrived at the home.  (Id. at ¶18.)  The complaint alleges that "without investigating the incident or without provocation" the police officers "started hitting people with batons and using force that was unreasonable."  (Id.)

The complaint alleges that Martinez was trying to stop the verbal confrontation when Defendant officer Tafoya arrived. (*Martinez* Complaint, ¶24.)  The complaint specifically alleges

**7**

that upon arrival Tafoya "immediately started to hit and throw people around." (*Martinez* complaint)  Plaintiff Martinez was five months pregnant at the time of the incident.  (Id.) Martinez alleges that she suffered injuries to her arms, legs, and back as a result of Tafoya throwing her to the ground.  (Id.) She alleges that Tafoya knew or should have known that Martinez was pregnant at the time of the incident.  (Id.)

Plaintiff Ralph Rendon also alleges that he was trying to stop the verbal confrontation when Defendant Sergeant Manfredi arrived on the scene.  (Id. at ¶25.)  Plaintiff Ralph Rendon claims that he saw Sergeant Manfredi "hitting and pushing other people from the porch."  (Id.)  Sergeant Manfredi proceeded to push Plaintiff Ralph Rendon to the ground face down and attempted to place handcuffs on him.  (Id.)  The complaint then states that "at that point, Manfredi started hitting Plaintiff [Ralph] Rendon on the head with his weapon."  (Id.)  As a result, Plaintiff Ralph Rendon suffered injuries to his head and body and was taken to a hospital for treatment of those injuries.  (Id.)

The *Martinez* complaint names as Defendants the City of Fresno, the Chief of Fresno City Police Department, Jerry Dyer, ("Chief Dyer"), Sergeant Manfredi, Officer Tafoya, and other FPD officers.  (*Martinez* Complaint, ¶4; ¶¶ 6-7.)  The complaint also brings a claim against Sergeant Manfredi and Officer Tafoya in their individual capacities.  (Id. at ¶9.)  The first cause of action in the *Martinez* complaint alleges that FPD officers Manfredi and Tafoya, along with other FPD officers, used excessive force in the course of responding to the disturbance and in arresting Plaintiff Martinez and Plaintiff Ralph Rendon.

**8**

(Id. at ¶19.)  The second cause of action alleges that the City
of Fresno negligently hired, trained, staffed and supervised the
officers involved.  (Id. at ¶29.)  As a result, the City of
Fresno and Chief Dyer breached a duty of care to plaintiffs to
protect citizens against the use of excessive force by Fresno
Police Officers.  (Id. at ¶30.)  Plaintiffs' third claim is that
"Defendants Sergeant Manfredi and Officer Tafoya conspired
together [to] falsely creat[e] the allegations of the police
report in order to justify their unlawful acts and conduct."
(Id. at ¶35.)  Finally, Plaintiffs allege that all Defendants are
liable under Article I, §§ 7 and 13 of the California
Constitution for violation of their civil rights.  (Id. at ¶¶43-
45.)

## 4.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 42(a) provides:

> When actions involving a common question of
> law or fact are pending before the court,
> [the court] may order a joint hearing or
> trial of any or all the matters in issue in
> the actions; it may order all the actions
> consolidated; and it may make such orders
> concerning proceedings therein as may tend to
> avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  Rule 42(a) permits consolidation of
"actions involving a common question of law or fact." *Paxonet
Communs., Inc. v. Transwitch Corp.,* 303 F. Supp. 2d 1027, 1028-
1029 (N.D. Cal. 2003).  Once a common question has been
established, "consolidation is within the broad discretion of the
district court." *Id.* (internal quotations omitted.)  But "even
where cases involve some common issues of law or fact,

9

consolidation may be inappropriate where individual issues predominate." *See IN re Consol. Parlodel Litig.,* 182 F.R.D. 441, 447 (D.N.J. 1998). To determine whether to consolidate, the interest of judicial convenience is weighed against the potential for delay, confusion, and prejudice caused by consolidation. *Id.* (citing *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,* 720 F. Supp. 805, 807 (N.D. Cal. 1989).) The moving party bears the burden of showing consolidation is appropriate. *Consol. Parlodel Litig.,* 182 F.R.D. at 447.

### 5. **DISCUSSION**

#### A. **Common Questions of Law and Fact Predominate Over Individual Questions.**

Defendants argue that *Rendon, Rodriguez,* and *Martinez* should be consolidated because common questions of law and fact predominate over individual questions in each case. They claim that all actions arise from the same underlying incident. They argue that the central factual issue in each case is the nature of the disturbance upon the police officers' arrival at the Rendon residence. Defendants contend that in all three lawsuits, the larger factual questions pertain to the surrounding circumstances that led the FPD to respond to the call.

The *Rodriguez* Plaintiffs argue that individual questions of fact and law predominate over questions common to the three cases such that consolidation would be inappropriate. They claim that a particularized set of facts is involved for each individual plaintiff and that underlie the specific misconduct alleged in each case. Accordingly, the *Rodriguez* case involves a different

**10**

1    factual predicate because the *Rodriguez* Plaintiffs were inside

2    the house when the FPD arrived on the scene.    Plaintiffs David

3    Rendon, Lupe E. Martinez, and Ralph C. Rendon were outside the

4    house when the incident occurred.    Because the *Rodriguez*

5    Plaintiffs were inside the house, they claim that their lawsuit

6    will implicate fewer police officers and require far fewer

7    witnesses than in *Rendon* and *Martinez*.    Lastly, they frame the

8    issue in the *Rodriguez* lawsuit as whether Officer Tafoya

9    specifically violated the *Rodriguez* plaintiffs' rights, and that

10   mere overlap of some legal standards common to all cases does not

11   warrant consolidation.

12       The *Rodriguez* Plaintiffs cite *Denney v. Takaoka*, *1992 U.S.*

13   *Dist. Lexis 13372 (N.D. Cal. 1992)* as the principal case in

14   support of their argument.    In *Denney*, the Court denied

15   consolidation reasoning that even though the same legal standards

16   would apply to both cases, separate factual issues underlie the

17   alleged misconduct in each case.    *Denney v. Takaoka,* 1992 U.S.

18   Dist. Lexis 13372, 3 (N.D. Cal. 1992).    The *Denney* case is

19   factually distinguishable from *Rodriguez*, and instead serves to

20   undermine the *Rodriguez* Plaintiffs' argument.    Plaintiff *Denney*,

21   sought to consolidate her civil rights complaint with another

22   pending civil rights action against the University of California

23   Police Department at Berkeley.    *Id.* at 3.    Both actions involved

24   the police arrests of Plaintiffs for protesting in the same park.

25   *Id.* at 2-3.    However, the arrests occurred on three separate and

26   distinct incidents that were months apart.    *Id.* at 3-4.    The

27   circumstances and witnesses for each case differed.    *Id.*    Based

28   on this, the court found that consolidation would be improper.

**11**

*Id.* at 4.  Contrary to *Denney,* the circumstances in *Rendon, Rodriguez,* and *Martinez* arise out of the same underlying incident relevant to all three cases which occurred at the same location, time, and date, and involved all the same parties who were present.  The circumstances and witnesses for each case will not substantially differ here as they did in *Denney*.

The case of *Young v. City of Augusta, 59 F.3d 1160 (11th Cir. 1995)*, is more instructive.  This civil rights case involved Plaintiff's Eighth Amendment claim against prison officials for improper treatment of her mental health condition.  Plaintiff Young alleged that the City of Augusta failed to adequately select or train jail personnel to deal with inmates suffering from mental illness.  *Young v. City of Augusta,* 59 F3d 1160, 1165 (11th Cir. 1995).  Plaintiff Young's attorney sought to consolidate her case with the case of another of his clients who also brought an Eighth Amendment claim against the City Jail. *Id.* at 1165.  The court noted that there were differences between the two actions in that each plaintiff alleged a different set of facts concerning his or her *particular* medical needs and the responses made by jail employees.  *Id* at 1168.  Nevertheless, the court reasoned that consolidation would have been appropriate[3]. *Id.* at 1169.  Both actions contained the same allegations of deliberate indifference to Plaintiffs' medical needs by jail officials.  *Id.* Both actions claimed a city custom, practice, or

---

[3]  However, the Court did not find that the magistrate abused his discretion in denying Plaintiff's motion given the permissive nature of Rule 42(a) and because Plaintiffs were still able to establish their claims without consolidation.

1  policy of deliberate indifference in providing mental health

2  treatment. *Id.* The core issue of liability was whether the city

3  could be held accountable for Plaintiffs' alleged constitutional

4  deprivations. *Id.* Both cases were assigned to the same district

5  judge and followed a similar course of development. *Id.* at 1169.

6  In both actions the parties would have to prove the same elements

7  to establish their claims. *Id.* at 1169.

8       In this case, the Plaintiffs in *Rendon, Rodriguez*, and

9  *Martinez* all bring identical claims for civil rights violations

10  under the Fourth Amendment, negligence against all Defendants,

11  and allege a pattern and practice of use of excessive force by

12  the FPD. Factual differences do exist between *Rendon, Rodriguez,*

13  *and Martinez.* However, they share the same core issues of

14  whether Defendants can be held accountable for the alleged civil

15  rights and state law deprivations claimed by the Plaintiffs.

16       It is recognized that the proof required to establish such

17  claims will not be entirely identical in each case. Individual

18  differences exist as to how each plaintiff was allegedly injured.

19  However, the officer witnesses will be similar. Third party

20  witnesses who attended the party will overlap, and the *Monell*

21  witnesses are identical. All cases were assigned to the same

22  district court. In all three actions the Plaintiffs must prove a

23  city custom, practice, or policy of permitting officers to use

24  excessive force, failing to train, and ratifying and/or ignoring

25  alleged cover ups and fabrication of evidence to provide post hoc

26  justification for lawless tactics. This necessarily mandates

27  proof that the alleged violations were not isolated instances.

28  *Denney*, 59 F.3d at 1169. There are common questions of law in

**13**

the *Rendon, Rodriguez,* and *Martinez* actions predominate over the individual ones.   The issue, however, is whether the benefits of consolidating the cases for trial outweigh the potential prejudice to the parties.

**B.   The Procedural Stages Of *Rendon, Rodriguez* and *Martinez***

Plaintiffs in *Rodriguez* contend that consolidation would be improper because it would result in a significant delay since the cases are in different procedural stages.   In support of their argument the *Rodriguez* Plaintiffs cite *Zacky Farms v. FMC Corp.,* 2001 *U.S. Dist. Lexis 24255 (E.D. Cal. 2001)*.   In *Zacky Farms* the Court declined to consolidate an environmental contribution action ("The FMC Action") with an environmental cost recovery action ("The Zacky Action").   *Zacky Farms v. FMC Corp.,* 2001 U.S. Dist. Lexis 24255, 3-4 (E.D. Cal. 2001).   Since both actions were highly complex and a consolidated trial would force the parties to participate in extensive evidence of the other parties' claims that were not pertinent, consolidation would disserve party and judicial economy.   *Id.* at 15.   The Court found that while commonalities existed between both actions, each action involved different uses and owners of the contaminated sites as well as different contaminants at different sites.   *Id.*   The strongest ground against consolidation was the significant procedural differences between the FMC and Zacky actions.   *Id.*   The FMC action had been actively prepared for litigation for two years.   *Id.* at 16.   The FMC action was ready for trial.   *Id.* at 15.   Consolidation would delay the FMC action for at least one year based on the Zacky cases complexities, in depth discovery, and additional parties.   *Id.* at 16.   Even though the documents and

**14**

1  discovery in the FMC action might assist the Zacky action,

2  significant time would have been required to review the documents

3  and discovery to ascertain what further information was needed.

4  *Id.*

5         **i.   Consolidation of *Rendon* and *Rodriguez* Will Cause
              Such a Substantial Delay That The *Rodriguez*
6              Plaintiffs Will Be Prejudiced.**

7         *Zacky Farms* differs from the *Rendon* and *Rodriguez*, lawsuits

8  in several respects.   The *Rendon* and *Rodriguez* actions are not so

9  different or so highly complex from each other that consolidation

10 would overburden Plaintiffs to engage in extensive discovery not

11 relevant to their individual claims.   The *Rendon* and *Rodriguez*

12 actions involve the same claims, the same underlying incident,

13 the same defendants and the same core issues.   The proof required

14 to establish each claim is identical in each case and the

15 difference in the witnesses for each case would be the four

16 plaintiffs and any different percipient witnesses to each

17 plaintiff's individual experience.   While procedural differences

18 do exist, these differences are not so significant that they

19 would substantially delay the *Rodriguez* lawsuit.   Both cases have

20 been consolidated for discovery purposes.   Both cases have the

21 same trial date of September 26, 2005.   Consolidation for the

22 purposes of trial in this case would avoid serious duplication of

23 effort in two separate trials.

24        **ii.  Consolidation With *Martinez* Would Substantially
              Delay The *Rendon* and *Rodriguez* Proceedings.**
25
26        The difference in procedural stages between the three cases

27 would substantially delay the *Rendon* and *Rodriguez* trials if

28 *Martinez* were to be consolidated.   The *Rendon* case was filed on

**15**

May 20, 2005.  The *Rodriguez* case was filed on August 5, 2005.
The discovery cut off date for both *Rendon* and *Martinez* is June
2, 2006, less than three weeks after the hearing on this motion.
The *Rendon* and *Rodriguez* cases are nearing trial on September 26,
2006.

The *Martinez* case was filed on March 1, 2006, ten months
after the *Rendon* case was filed and seven months after the
*Rodriguez* case was filed.  *Martinez* is still in the formative
stages.  The initial scheduling conference is not set until July
12, 2006.  No trial date or discovery cut off has been set in
*Martinez*.  Even if the *Rodriguez* Plaintiffs were to share
discovery in the *Martinez* case, the *Martinez* Plaintiffs would
still require time to review the documents and discovery.
Defendants advance no meaningful justification for delay in the
*Rendon* and *Rodriguez* proceedings.  Because the parties are
different there will be no claim or issue preclusive effect.
While Defendants may not want to try two *Monell* cases and go
through the same witnesses, to consolidate *Martinez* with *Rendon*
and *Rodriguez* would cause a substantial and unfair delay.  The
court committed to the parties in *Rendon* and *Martinez* that the
case will proceed to trial September 26, 2005.  That is the date
that the case will be tried.

**C.   Consolidation Poses A Potential For Jury Confusion.**

The *Rodriguez* Plaintiffs also argue that a consolidated
trial would prejudice their case because it would require the
jury to review extraneous evidence and make decisions relevant to
the distinct legal claims of *Rendon.*  They argue that there is a
real risk the jury would confuse the evidence or legal questions

**16**

1   regarding the other individual Plaintiffs, whose factual

2   situations are different.  They also claim that a jury's

3   simultaneous considerations of the evidence in the three cases

4   may lead it to draw inferences based the conduct of other

5   plaintiffs, rather than decide each case on its own merits.

6       "The extent to which the risk of prejudice and confusion

7   might attend a consolidated trial may be alleviated by utilizing

8   cautionary instructions to the jury during the trial and

9   controlling the manner in which Plaintiffs' claims and defenses

10  are submitted to the jury for consolidation."  *Hendrix v.*

11  *Raybestos Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985);

12  James William Moore et al., Moore's Manual: Federal Practice and

13  Procedure, § 20.02 (Matthew Bender ed., 2006). The jury will be

14  dealing with the individual claims of six plaintiffs only two of

15  whom are represented by counsel.  A potential for spillover

16  prejudices exists if the *Martinez* action is consolidated with

17  *Rendon* and *Rodriguez* actions.  Even if instructions are given,

18  the jurors may be confused or misled by the cases of all six

19  plaintiffs[4].

20  //

21  //

22  //

23  //

24

25  ————————————————

26      [4] At oral argument, Counsel for the *Rodriguez* Plaintiffs
    agreed to consolidate with the *Rendon* action for trial purposes,
27  provided the jury was properly instructed to refrain from
    applying any allegations against Plaintiff David Rendon to the
28  *Rodriguez* plaintiffs.

## CONCLUSION

For the reasons set forth above, Defendants motion to consolidate *Rendon v. Fresno,* 1:05-CV-00661 OWW DLB and *Rodriguez v. F*resno*,* 1:05-CV-01017 OWW DLB is **GRANTED FOR THE PURPOSES OF TRIAL.**  Defendants' motion to consolidate *Martinez v. Fresno*, 1:06-CV-00233 OWW DLB is **DENIED.**

**SO ORDERED**

Dated: May 31, 2006

/s/ OLIVER W. WANGER

_____

**OLIVER W. WANGER**
**United States District Judge**

18